George SIMON et al., Plaintiffs,

v.

**GULF COAST RENTAL TOOL SERVICE, INC. and Land and Marine Rental Company, Defendants.**

Civ. A. No. CA–2–76–11.

United States District Court,
N. D., Texas,
Amarillo Division.

Feb. 26, 1976.

---

**6.** See 43 C.F.R. § 3.1 et seq.

Harlow L. Sprouse, Underwood, Wilson, Sutton, Berry, Stein & Johnson, Amarillo, Tex., for plaintiffs.

Joe Harlan, Gibson, Ochsner, Adkins, Harlan & Hankins, Amarillo, Tex., for Gulf Coast.

Jess C. Dickie, Culton, Morgan, Britain & White, Amarillo, Tex., for Land & Marine.

## MEMORANDUM

WOODWARD, District Judge.

The question for consideration by the court in the present case concerns the propriety of removal pursuant to 28 U.S.C. § 1441(c). This case originally was filed in the State District Court of

Wheeler County. The defendants filed petitions for removal, and the plaintiffs have filed their motion to remand. The defendants and plaintiffs have filed briefs in support of their respective positions, and oral argument was heard before the court in Amarillo on February 17, 1976. The relevant factual allegations appear as follows.

Plaintiffs are a number of individuals, corporations and limited partnerships who had joined together with one Amarex, Inc., a Delaware corporation with a permit to do business in Texas, who served as the operator in drilling a gas well in Wheeler County, Texas. The plaintiffs owned undivided interests in the mineral estate of the tract of land on which the well was located. Pursuant to said drilling operation, Amarex requested Land and Marine Rental Company (L&M), a Delaware corporation licensed to do business in Texas, to furnish a rental string of three and one-half inch drill pipe to drill to a depth of 21,500 feet. Additionally, Amarex requested that the individual joints of drill pipe be electronically and visually tested for any defects in the body and end areas; L&M so agreed. L&M subsequently represented to Amarex that such inspections had been made, and Amarex commenced drilling with the L&M pipe. The pipe separated while in the well. When Amarex attempted to remove the pipe remaining in the well, another joint separated. Amarex contends that both separations were caused by defects which would have been discovered by the type of inspection that L&M agreed to perform.

In order to continue the drilling of the well, and being somewhat dissatisfied with L&M's field record, Amarex ordered pipe from Gulf Coast Rental Tool Service, Inc., a Louisiana corporation whose principal place of business is in Louisiana. Gulf Coast represented that such pipe was Grade S–135 "Blue Ribbon Premium." When Amarex began the process of removing L&M's pipe from the well, Gulf Coast's pipe separated. Amarex contends that the joint of pipe that separated was of a lower quality than that which Gulf Coast had agreed to furnish. As a result of both sets of defective pipe, Amarex was unable to complete the well.

The plaintiffs brought suit in state district court and sued L&M and Gulf Coast for breach of warranty and strict liability in tort. The plaintiffs sought the following relief:

(1) Judgment against L&M for $200,-000 for "damage to real estate;"

(2) Judgment against Gulf Coast for $25,442.06 for damage to real estate, i. e., additional drill pipe rentals, trucking, and loss of collars;

(3) Judgment against L&M and Gulf Coast jointly and severally for $3,000,000 for the loss of the well; and

(4) Judgment by Amarex against L&M and Gulf Coast jointly and severally for $5,000,000 for damages to its professional reputation and good will.

The defendants removed the case and the propriety of the removal was raised in the plaintiffs' motion to remand. L&M is a Delaware corporation and complete diversity is absent with respect to L&M; therefore, removal is improper under 28 U.S.C. § 1441(a). Because there is no federal question so as to allow removal pursuant to section 1441(b), removal can only be proper if the requirements of section 1441(c) are met.

Section 1441(c) provides that:

> Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

28 U.S.C. § 1441(c). There is complete diversity with respect to the defendant Gulf Coast, and a cause of action against it alone would be removable. In order

for the entire case to be removable, however, a claim against Gulf Coast in this suit must be "separate and independent" from the non-removable claims and causes of action in the suit. Proper consideration of this question can be made only with the relevant decisions and policy of the statute in mind.

■ Section 1441(c), which was substituted for the old 28 U.S.C. § 71 (1940), utilizes the language "separate and independent" in place of the old section 71 test of "separability." *See* 28 U.S.C.A. § 1441, Reviser's Notes; Wright, Miller and Cooper, Federal Practice and Procedure § 3724 at 621–22 (1975). The two-fold purpose in making this statutory revision was not only to attempt to simplify the considerations to be made in determining the propriety of removal, but also to help reduce the number of cases actually removed to federal court. *See American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 9–10, 71 S.Ct. 534, 537–538, 95 L.Ed. 702, 706–707 (1951); 28 U.S.C.A. § 1441, Reviser's Note at 5–6; Wright, Miller and Cooper, *supra,* at 623. As a result of such policy considerations, the court is mindful that the language "separate and independent" should be adhered to strictly, as the predominant number of cases in the area indicate.

The classic discussion of the phrase "separate and independent" in section 1441(c) is found in *American Fire & Casualty Co. v. Finn, supra. Finn* involved a suit for insurance proceeds claimed to be due on the loss of property. Liability was disputed by an insurance agent and two insurance companies, each of whom had been sued separately and jointly and severally. Discussing the separate and independent nature of the claims against the insurance companies, the Court observed that there was but a single invasion of a right of the plaintiff although there may have been multiple acts constituting such invasion. The Supreme Court summed up its position on the case with the oft-quoted phrase that "where there is a single wrong to the plaintiff, for which relief is sought, arising from an interlocked series of transactions,

there is no separate and independent claim or cause of action under section 1441(c)." *American Fire & Casualty Co. v. Finn, supra* at 14, 71 S.Ct. at 540.

Further explanation of this phrase is found in *Snow v. Powell,* 189 F.2d 172 (10th Cir. 1951). The court focused its attention upon the definitions of the two words in the phrase as a basis of its analysis.

The word "separate" means distinct; apart from; not united or associated. The word "independent" means not resting on something else for support; self-sustaining; not contingent or conditioned.

*Snow v. Powell, supra* at 174. The court held that a claim against a railroad company for its agent's failure to act to prevent harm to the plaintiff was not, in light of the definitions discussed, "separate and independent" of the action against the agent.

■ The plaintiffs' original petition in this case, which controls the issue of "separate and independent" claims, *Greenshields v. Warren Petroleum Co.,* 248 F.2d 61 (10th Cir.), *cert. denied,* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957), now must be analyzed in light of the previously discussed cases and principles. The claim against L&M and Gulf Coast for damage to the business reputation of Amarex is dependent upon the claim for the loss of the well. *See Snow v. Powell, supra.* The claim against L&M and Gulf Coast is couched in terms of joint and several liability. If the claim against Gulf Coast for the loss of the well is not separate and independent from the claim against L&M for the loss of the well, then removal cannot be based upon this claim. Further, if the plaintiff has alleged with the requisite sufficiency a claim for joint and several liability against L&M and Gulf Coast, then the claim against Gulf Coast for the loss of the well is not separate and independent from the claim against L&M. *See Edwards v. E. I. DuPont De Nemours & Co.,* 183 F.2d 165 (5th Cir. 1950); Wright, Miller and Cooper, *supra* at 640–41.

■ In order to ascertain whether or not a legally sufficient claim for joint and several liability has been pled by the plaintiff, the court must look to state law. *Edward v. E. I. DuPont De Nemours & Co., supra.* The controlling case in Texas is *Landers v. East Texas Salt Water Disposal Co.,* 151 Tex. 251, 248 S.W.2d 731 (1952). Two companies, Sun Oil and East Texas Salt Water Disposal, maintained salt water pipelines which were located adjacent to the plaintiff's land. On the same day, both pipelines leaked onto the plaintiff's land and into his lake, thus damaging his property and lake. In a landmark decision, Justice Calvert held that the allegations in the plaintiff's petition were sufficient to assert a case of joint and several liability against the defendants.

> Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable for the entire damages.
>
> . . .

*Landers v. East Texas Salt Water Disposal Co., supra* 248 S.W.2d at 734.

■ In the case now before the court, the acts of the defendants which caused the harm did not occur on the same day, but such simultaneous occurrence is unnecessary as long as the acts of the wrongdoers cause an "indivisible" injury. The loss of the well in the instant case is such an injury. Further, the fact that some incidents of damages may be attributable solely to one party will not defeat a joint and several claim. For instance, in *Landers,* East Texas alone was to be held responsible for the loss of trees and grass killed by the salt water escaping from its pipeline before the salt water entered the lake. *Landers v. East Texas Salt Water Disposal Co., supra* at 735. In short, the plaintiffs' allegations in this case with respect to the loss of the well are legally sufficient to state a claim of joint and several liability against L&M and Gulf Coast. *See Landers v. Texas Salt Water Disposal Co., supra.* As such, the claim against Gulf Coast for the loss of the well is not separate and independent from the claim against L&M for the loss of the well. *See Edwards v. E. I. DuPont De Nemours & Co., supra*; and Wright, Miller and Cooper, *supra* at 640–41.

The defendants have argued strenuously that *Climax Chemical Co. v. C. F. Braun & Co.,* 370 F.2d 616 (10th Cir. 1966) applies to the facts of this case. Climax sued several defendants because they had constructed a chemical plant which failed to operate. Braun had been hired to design, engineer and oversee the construction of the entire plant. The other defendants had been hired to construct only specific components of the plants. Braun was sued individually for the loss of the entire plant; Braun and each of the other defendants were sued jointly and severally for the negligent construction of the component for which each defendant was responsible. The other defendants were sued jointly and severally only with Braun and not with each other. In refusing to remand, the district court concluded that these claims were a number of separate and independent claims. The Tenth Circuit agreed because it concluded that there was more than one right, more than one wrong, and ". . . no defendant assumed responsibility for other than its own unit, or was liable in any way for the failure of the others." *Climax Chemical Co. v. C. F. Braun & Co., supra* at 618. The validity of the court's opinion is irrelevant for purposes of application to this case, for the *Climax* opinion is distinguishable. The defendants other than Braun were not being sued jointly and severally for the failure of the entire plant, but only for the failure of each defendant's component. In contrast, Gulf Coast and L&M each are being sued jointly and severally for the loss of the well as a whole. Consequently, *Climax* is not applicable to the facts of this case.

The final prayer in the plaintiffs' petition for the consideration of the court is

the prayer for damages against Gulf Coast for the "damages to real estate," that is, for the cost of additional drill pipe rentals, trucking, and loss of drill collars. The defendants naturally have contended that this prayer for damages is "separate and independent" from the non-removable claims in the suit.

In order to resolve this issue properly, the entire suit must be viewed as a whole. The acts of both L&M and Gulf Coast caused the plaintiffs to be unable to complete the drilling of the gas well. The final set of acts in the "interlocked series of transactions" which sealed the fate of the well were those of Gulf Coast. Such acts, taken in conjunction with the acts of L&M, allegedly caused the loss of the well; such acts of Gulf Coast taken alone also caused damages attributable solely to Gulf Coast. Thus, there are several incidents of damages resulting from the same wrongful acts. The cause of action is one for breach of warranty and/or strict liability in tort against both L&M and Gulf Coast. The facts and circumstances of Gulf Coast's alleged liability for those damages attributable to it alone and the facts and circumstances of L&M's and Gulf Coast's liability for damages attributable to both of them are so intertwined and related as to preclude a conclusion that the prayer for damages against Gulf Coast individually is a "separate and independent" claim. To conclude that a mere prayer for those damages attributable solely to Gulf Coast bootstraps such a prayer up to the status of a "separate and independent" claim or cause of action would be to ignore the operative facts and underlying realities of the case. In essence, this lawsuit involves a prayer for multiple damages with damages claimed against one defendant containing incidents not applicable to the other; one element of such a prayer is not sufficient to constitute a separate and independent cause of action. *Cf. Unanue v. Carribbean Canneries, Inc.,* 323 F.Supp. 63, 67 (D.Del. 1971); and *First National Bank v. Amer-*

*ican Marine & General Insurance Co.,* 181 F.Supp. 285, 289 (E.D.Ark.1960).

Furthermore, the fact that the plaintiffs could have sued Gulf Coast alone for the damages attributable solely to it is inconclusive, not only because this is not the determinative test, *see Schoneweather v. L. F. Richardson, Inc.,* 122 F.Supp. 692, 693 (W.D.Mo.1954), but also because the plaintiff chose not to do so, and the question of removability is to a certain extent dependent upon the pleadings of the plaintiff. *Greenshields v. Warren Petroleum Corp., supra*; and *Roby v. Maine Central Railroad,* 243 F.Supp. 153 (D.N.H.1965).

In summary, this court is of the opinion that there is not separate and independent claim or cause of action in the case *sub judice* so as to allow removal pursuant to 28 U.S.C. § 1441(c). Accordingly, it is hereby ORDERED that the plaintiffs' motion to remand be GRANTED; the case is REMANDED to the 31st Judicial District Court of Wheeler County, Texas, in accordance with the order of remand entered by the court concurrently with this memorandum.