**SED, INC., et al., Plaintiffs,**

v.

**CITY OF DAYTON, Defendant.**

No. C–3–81–193.

United States District Court, S. D. Ohio, W. D.

July 1, 1981.

William R. McCarty, Martin, McCarty, Richman & Wright, Fairborn, Ohio, for plaintiffs.

Thomas G. Petkewitz, City Atty., Dayton, Ohio, for defendant.

OPINION AND ENTRY SUPPLEMENTING DECISION OF JUNE 11, 1981, OVERRULING BRANCHES VI AND VII OF THE DEFENDANT'S MOTION TO DISMISS

RICE, District Judge.

In its Decision and Entry of June 11, 1981, 515 F.Supp. 737, which, *inter alia*, overruled six of the seven branches of the Defendant's motion to dismiss the Plaintiffs' amended complaint, the Court, in overruling Branches VI and VII of said motion, indicated that it would set forth its detailed reasoning at a later date. Said reasoning follows in this opinion and entry, which should be read in lieu of the first paragraph on page 9 of the former Decision and Entry.

In Branch VI of the motion, the Defendant says that this Court should refuse to exercise subject matter jurisdiction over Plaintiffs' cause, under the "abstention doctrine," because matters of Ohio law or Ohio policy are implicated.

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exemption to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide

cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (citation omitted). This Court concludes that the Defendant has not demonstrated, at this time, that this case clearly involves the kind of "exceptional circumstances" which warrant abstention.

The four recognized branches of the judicially developed abstention doctrine are examined and summarized in *Colorado River, supra,* at 814–19, 96 S.Ct., at 1249. On two occasions within the last year, the Sixth Circuit has repeated the essence of that discussion. *See Northwood Apartments v. Valley,* 649 F.2d 401, 406 (6th Cir. 1981); *Hanna v. Toner,* 630 F.2d 442, 444–46 (6th Cir. 1980). The Defendant, herein, appears to rely on two of those recognized branches.

*Pullman* abstention, *see Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is appropriate where a federal constitutional question is presented which might be mooted by a state court's resolution of an unsettled question of state law.

■ However, "the opportunity to avoid decision of a constitutional question does not alone justify abstention by a federal court." *Colorado River, supra,* 424 U.S. at 815 n.21, 96 S.Ct. at 1245 n.21. "If the state statute in question, *although never interpreted by a state tribunal,* is not *fairly subject* to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction." *Harman v. Forssenius,* 380 U.S. 528, 534–35, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965). In other words, it is not enough for abstention that a party might structure a question of state law which would be of "first impression" to the state's courts and which, if resolved in a certain way, would moot the federal question. The question of state law must also be real and pertinent to the circumstances presented, and its resolution so as to moot the federal question, must at least be open to substantial doubt.

We turn then to the "unsettled" question of state law in this case upon which it is alleged that the ordinances at issue might be deemed invalid, at the threshhold, and, thereby, preclude the necessity of inquiring further into their federal constitutional validity under a federal preemption challenge. As articulated by the Defendant in support of abstention, the question of state law parallels Plaintiff's third claim for relief[1] and may be summarized as follows:

1. The Court intimates no opinion, by virtue of the following discussion in text, with respect to the sufficiency of the statement of Plaintiffs' third claim, or with respect to the ultimate merits of any aspect, thereof. The Court is only concerned with the present demonstration, or the lack, thereof, regarding the existence of exceptional circumstances indicating that important countervailing interests would be clearly served by abstention.

The Court also intimates no opinion regarding the dubious position Defendant implicitly must assume by urging, herein, that there is substantial doubt regarding the validity of its ordinances under the state constitution while, at the same time, it seeks preliminary injunctive relief and a two million dollar monetary judgment against Plaintiffs, in state court, under authority of those ordinances.

In passing, however, the Court does note, that the Defendant's similar allegation of inconsistency between Plaintiffs' first and third claims (i. e., the third claim alleges that the ordinances are invalid because in conflict with state law, while the state law is implicitly alleged in the first claim to be preempted and invalid by federal law), places an unwarranted gloss on the federal and state laws in question, and may reflect a basic misunderstanding of the preemption issues in this case.

The express federal preemption statute involved in this case, 15 U.S.C. § 2617, *see* Part IV *infra,* is, by its own terms, *not an absolute prohibition against all local legislation.* If the Ohio statutes regulating PCBs are excepted from preemption by the federal law (e. g., if the state statute is identical to federal regulations, or if the EPA has granted a specific exemption to Ohio), and the ordinances in question are not so excepted (i. e., they do not fall within any of the statutory "outs" provided by section 2617), then it is conceivable that, *in a proper case,* the ordinances might be held invalid under either state or federal law. In other words, the al-

Chapter 3734 of the Ohio Revised Code establishes state policies and procedures for dealing with hazardous waste. The chapter is administered by the director of the Ohio Environmental Protection Agency (OEPA), who is required to "provide for inspection, issuance of permits, and enforcement of [the chapter] and of regulations adopted thereunder governing storage, treatment, transportation, and disposal of hazardous waste." Revised Code § 3734.04.

Under Revised Code § 3734.05, as amended in October, 1980, any person seeking to operate or continuing to operate a facility for storage of hazardous waste must, *inter alia*, comply with "performance standards" adopted by the OEPA, and must obtain a permit from the "hazardous waste facility approval board" (chaired by the OEPA director) reflecting such compliance.

Revised Code § 3734.05(D)(3) provides that:

> No political subdivision of this state shall require any additional zoning or other approval, consent, permit, certificate, or other condition for the construction or operation of a hazardous waste facility authorized by a hazardous waste facility installation and operation permit issued pursuant to this chapter, nor shall any political subdivision adopt or enforce any law, ordinance, or regulation that in any way adheres, impairs, or limits the authority granted in the permit issued by the board.

At first blush, section 3734.05(D)(3) would *appear* to suggest a state-level "preemption," and state law invalidation of municipal ordinances regulating PCBs.

Thus, Defendant suggests that the ordinances at issue present a classic question of Ohio law involving the "general laws" of the state's legislature, the supposedly conflicting ordinances of one of the state's charter cities, and the ill-defined scope of the "municipal home rule" doctrine under the Ohio constitution. Ohio Const. Art. XVIII, §§ 2, 3, 7. Defendant says that if this matter were to be resolved against it in state court, it would moot the federal preemption question (i. e., the ordinances would be invalid on state law grounds) and that abstention is, therefore, warranted.

■ Whatever appeal this state law question might have had in the abstract, it has not been demonstrated that the question might really be presented in this case or be dispositive thereof. On its face, and under any fair interpretation, section 3734.-05(D)(3) only "preempts" local ordinances which apply to *facilities for which state approvals and permits have issued.* By negative implication, section 3734.05(D)(3) further suggests that there is nothing odious, in terms of state law, about local ordinances regulating hazardous waste storage in facilities for which no state permits or approvals have issued. Thus, the only circumstances in which it might be said that the ordinances in question conflict with the state's general law, such that an independently dispositive state law question on "municipal home rule" might be considered presented, would be if the SED facility has been approved and is operating pursuant to a state permit.

The record in this matter is devoid of any evidence, allegation, or indication which suggests that a state permit has issued for the SED facility.[2] Thus, it does not pres-

---

leged invalidity of the ordinances by virtue of express federal preemption (Plaintiffs' first claim) does *not* necessarily require that the state statute also be considered invalid on such grounds, or that the state statute cannot independently serve to invalidate the ordinances (Plaintiffs' third claim).

**2.** Indeed, the only reference to Plaintiffs' compliance with the state statute is the assertion in their memorandum that "SED, Inc. has taken

the steps required of it by O.R.C. 3734.05(D)(1) . . . ." Section 3734.05(D)(1) establishes special procedures and standards by which a person, who was operating a hazardous waste facility as of the effective date of the statutory permit requirement (October 9, 1980), might *make application* for a permit while continuing such operations. The section provides that the application must be submitted by April, 1981. The section concludes by requiring that the

ently appear that this case warrants consideration (either in this Court or in state court) of the state law question on municipal home rule—much less its determination in a manner which would moot the federal preemption question—and *Pullman* attention is, therefore, also presently unwarranted.

*Burford* abstention, *see Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *see also Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), is appropriate where, irrespective of the presence of a federal question, substantial and important matters of state policy are implicated and federal court adjudication of the matter might disrupt the state's efforts at structuring or maintaining a coherent program in the area. The important state policy supposedly at risk in this case relates to Ohio's constitutional apportionment of governmental prerogatives between the state and its cities, in general, or with specific regard to the allocation of authority to deal with hazardous waste.

This Court questions whether hazardous waste problems are so parochial that they may properly be considered matters of *state* policy rather than of *national* concern. But that is beside the point because, when it comes to the relationship between a state and its cities, there can be no question that the federal court's "discretion" to stay its hand transforms into a nearly mandatory duty to abstain from adjudicating. The state-city relationship, regardless of the specific context in which it arises, is in itself a delicate and paramount issue of predominantly, if not exclusively, local concern. *City of Thibodaux, supra* at 28, 79 S.Ct. at 1072; *Chicago v. Fieldcrest Dairies, Inc.*, 316 U.S. 168, 172, 62 S.Ct. 986, 988, 86 L.Ed. 1355 (1942).

Nonetheless, the Court is not presently satisfied that such matters are actually

presented by this case. To the extent that the relationship between the Defendant and the State of Ohio might be thought implicated, it would be *only* on grounds that a "municipal home rule" question is extant in this case, which grounds this Court has rejected above. Thus, it simply has not been demonstrated that *any* state policy, whether involving the state's distribution of governmental authority to regulate hazardous waste, or, more generally, the state's distribution of governmental authority at large, is involved in the circumstances of this case. *Burford* abstention is, therefore, presently unwarranted.

Branch VI of the motion to dismiss is without merit and is, therefore, overruled.

In Branch VII of the motion, the Defendant says this Court should "decline to exercise pendent jurisdiction" over Plaintiffs' third claim for relief because no substantial federal question is otherwise presented upon which pendent jurisdiction might be predicated.

Because the Court has determined that the exercise of diversity jurisdiction is appropriate, herein (see discussion of Branches I and II *supra* ), the propriety of exercising "pendent" jurisdiction over any claim is not a viable issue.

Branch VII of the motion to dismiss is without merit and is, therefore, overruled.

---

approval board "act on the application" by October, 1981.

Thus, Plaintiffs' statement in memorandum that SED has done what is "required of it" under Section 3734.05(D)(1) indicates that a permit application has been filed and properly

supported. Conspicuously absent from Plaintiffs' brief reference to that section is any indication that the approval board has acted on the application in a positive way and issued a permit.