Dale L. CHAPPELL; Richard and Frances Balestri; David and Pamela Zaksas; Frank and Marie Molinar; James and Barbara Mussatto; James and Rosetta Kilgore; Joe and Sharon Borgini; Elvin and Gladys Sawyer; Joe and Marie Bertetto; Dennis and Albena Bruckert; Gwen Molinar; Frank and Helen Aghetta, as representatives of a class of all residents of the Village of Wilsonville and owners of unincorporated territory

located within a 5 mile radius of the Village of Wilsonville, Plaintiffs,

v.

SCA SERVICES, INC., Earthline Corporation, and James Douglas Andrews, Defendants.

No. 82–3043.

United States District Court, C. D. Illinois, Springfield Division.

May 3, 1982.

Verticchio & Verticchio, Gillespie, Ill., James C. Craven, Londrigan & Potter, P. C., Springfield, Ill., for plaintiffs.

Thomas W. Weaver, Thomas M. McMahon, Robert M. Olian, Sidley & Austin, Chicago, Ill., Frederick C. Prillaman, Roger W. Holmes, Mohan, Alewelt & Prillaman, Gary M. Peplow, Heyl, Royster, Voelker & Allen, Springfield, Ill., for SCA Services, Inc.

Raymond L. Terrell, Drach, Terrell & Deffenbaugh, P. C., Springfield, Ill., for James Andrews.

## ORDER

J. WALDO ACKERMAN, Chief Judge.

This matter is before the Court upon plaintiffs' motion to remand the case to the Macoupin County Circuit Court after defendant SCA Services, Inc. removed the case to this Court. The suit is a class action brought on behalf of the residents of the Village of Wilsonville, seeking damages for property losses and personal injury which resulted from the creation, maintenance and operation of a hazardous-chemical-waste landfill containing polychlorinated byphenyls (PCB's), together with other toxic waste substances, near Wilsonville. The Macoupin County Circuit Court, after 104 days of trial, concluded that the hazardous waste landfill constituted both a private and public nuisance. The court enjoined defendant SCA Services, Inc. from operating the landfill and ordered SCA to remove all toxic waste buried there and to restore and reclaim the site.

The Illinois Appellate Court for the Fourth District and the Illinois Supreme Court have affirmed the trial court's judgment. See 77 Ill.App.3d 618, 33 Ill.Dec. 163, 396 N.E.2d 552 (1979); 86 Ill.2d 1, 55 Ill. Dec. 499, 426 N.E.2d 824 (1981), respectively.

The instant action was filed to recover damages which have accrued as a result of this nuisance. The named defendants are SCA Services, Inc., a Delaware corporation with its principal place of business in Boston, Massachusetts; Earthline Corporation, a corporation which had been merged with SCA prior to the commencement of this action; and, James Douglas Andrews, a citizen of Illinois.

Count I of the Complaint seeks damages from SCA as a result of the nuisance it has operated near Wilsonville. Plaintiffs claim damages for actual interference with the enjoyment of their real property, including past and future damages to their crops, residences and underground water supplies, and for the substantial diminution in property value which has occurred because of the proximity of the landfill to the village. Count II of the Complaint is a claim for personal injuries which have resulted from the maintenance of this nuisance, including burning eyes, running noses, headaches, nausea and exposure to carcinogenic elements. Count III seeks punitive damages against SCA on the basis that it acted with reckless indifference to the safety of the public and on the basis of affirmative mis-

representations allegedly made to the village concerning the character of the wastes to be stored at the site. Count IV alleges that James Andrews organized Earthline Corporation to operate a landfill site for toxic wastes and then sold Earthline to SCA. Plaintiffs claim that Andrews conspired with Earthline Corporation to create and maintain a public and private nuisance. In furtherance of that conspiracy, plaintiffs contend that Andrews, *inter alia*, acquired an interest in land adjacent to the village; misrepresented to the Illinois Environmental Protection Agency (IEPA) and the United States Environmental Protection Agency (EPA) that the village was a safe location for a landfill operation; submitted false permeability studies to IEPA and EPA; and, submitted false reports concerning the likelihood of subsidence in the area.

Count IV also alleges that Andrews *further* conspired with Earthline and SCA to personally profit and to insulate himself and Earthline from all liability for creation of the nuisance by merging Earthline with SCA. As a result of the conspiracy to create and maintain this nuisance, plaintiffs claim compensatory and punitive damages for personal injuries and property losses.

Defendant SCA has removed this case pursuant to 28 U.S.C. § 1441, asserting that this Court has both diversity and federal question jurisdiction over this suit. 28 U.S.C. § 1332 and 28 U.S.C. § 1331, respectively. Defendant contends that there is a separate and independent claim against it which also supports removal of the entire case.

### Diversity Jurisdiction

■ Generally speaking, for diversity of citizenship to serve as the basis for removal jurisdiction, it must exist both at the time the original action is filed in the state court, and at the time removal is sought. 14 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3723 at 592 (1976); 1A *Moore's Federal Practice,* ¶ 0.161[1] at 207 (2d ed. 1981). Defendant contends that complete diversity existed at the time the petition for removal was filed, notwithstanding defendant Andrews' Illinois citizenship. It argues that Andrews had not

been served with the complaint at the time the petition for removal was filed. Thus, SCA contends, he was not a defendant "properly joined and served" as required by 28 U.S.C. § 1441(b). Consequently, it argues that since the only resident, non-diverse defendant was not served at the time the petition for removal was filed, the case was properly removed.

■ This argument is completely lacking in merit.

A party whose presence would destroy diversity must be formally dropped as a matter of record to permit removal. It is insufficient, for example, that service of process simply has not been made on a nondiverse party; the case may not be removed until that party actually has been dismissed.

14 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3723 at 597–98 (1976). The fact that service has not yet been made on the resident defendant is insufficient to allow his citizenship to be disregarded. *Pullman Co. v. Jenkins,* 305 U.S. 534, 541, 59 S.Ct. 347, 350, 83 L.Ed. 334 (1939); 1A *Moore's Federal Practice,* ¶ 0.161[2] at 210–11 (2d ed. 1981). *Accord, Pecherski v. General Motors Corp.,* 636 F.2d 1156, 1160 (8th Cir. 1981); *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 78–9 (9th Cir. 1979); *Armstrong v. Monex International, Ltd.,* 413 F.Supp. 567, 570–71 (N.D.Ill.1976).

This is not a case where a plaintiff joins a resident defendant, but fails to ever serve him and commences trial without completing service of process on him. Here, the complaint was filed in state court on February 2, 1982. Plaintiff requested that summons be issued as to all defendants. The petition for removal was filed on February 12, 1982. In fact, the petition was filed prior to service of the complaint on SCA itself.

This case is a prime example of why the citizenship of an unserved resident defendant should not be ignored. Simultaneous service of multiple defendants is rarely possible. Thus, removal could be proper one day when service of the nonresident defendant was completed, but improper the next day when service had been completed on all

defendants. The rule thus avoids unnecessary jurisdictional problems. *Pecherski v. General Motors Corp.*, 636 F.2d 1156, 1161 n.6 (8th Cir. 1981); 1A *Moore's Federal Practice*, ¶ 0.168[3–2] at 451 (2d ed. 1981).

SCA also contends that diversity exists because James Andrews, the resident defendant, was fraudulently joined to defeat removal jurisdiction. SCA argues that the complaint so clearly fails to state a cause of action under Illinois law that it is frivolous and should be regarded as fraudulent. First, SCA asserts that the complaint merely charges Andrews with conspiracy to create and maintain a nuisance. It contends that conspiracy is not an actionable tort in itself under Illinois law and, therefore, there can be no recovery against Andrews.

■ Plaintiffs do not dispute that conspiracy in and of itself is not actionable. However, plaintiffs have charged the defendants with conspiracy to create and maintain a public and private nuisance. In other words, plaintiffs contend that the defendants agreed to do an actionable wrong together. *Ammons v. Jet Credit Sales, Inc.*, 34 Ill.App.2d 456, 181 N.E.2d 601 (1960), a case relied on by SCA, does not support its position. In that case, the acts which defendants allegedly conspired to do were not actionable wrongs. Therefore, conspiring to do them was not actionable. The court there said:

> In a civil case the wrongful acts alleged to have been done in pursuance of a conspiracy, and not the fact of the conspiracy itself, is the gist of the action for damages . . . The charge of conspiracy is merely an aggravation of the alleged wrongful acts; it serves the purpose of associating all the defendants with the acts done, and the declarations made, by any one of the defendants in pursuance of the conspiracy . . . Inasmuch as the acts of the defendants in this case were neither criminal nor civil wrongs for which damages can be recovered, the charge of conspiracy adds nothing to the amended complaint.

*Id.* at 465, 181 N.E.2d 601. (Citations omitted). Accordingly, the allegations of this complaint sufficiently allege an actionable conspiracy, since creation of a nuisance is itself an actionable wrong.

■ Next, SCA maintains that the complaint is fatally deficient because it alleges that only Andrews and Earthline conspired to create and maintain a public and private nuisance. Under Illinois law, a corporation cannot conspire with its officers and agents. *Friendship Medical Center, Ltd. v. Space Rentals*, 62 F.R.D. 106, 112 (N.D.Il.1974). Consequently, since Andrews was an officer of Earthline, he could not have conspired with it, and thus, defendant contends, the complaint fails to state a claim.

Plaintiffs agree that in Illinois, a corporation cannot conspire with its officers. They contend, though, that the complaint merely omitted SCA's name and that it should read that defendant Andrews conspired with Earthline and SCA to create and maintain this nuisance. Further, plaintiffs state that a defect in their pleadings should not support removal, but rather that defendant SCA, in order to support its claim of fraudulent joinder, must show that under no set of facts pleaded could plaintiffs recover from defendant Andrews under Illinois law.

> The joinder may be fraudulent if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state. If there is a possibility that the plaintiff has stated a cause of action, the joinder is not fraudulent, and the cause should be remanded. Nor will a merely defective statement of the plaintiff's action warrant removal. If the plaintiff has stated a cause of action against the resident defendant, that is normally sufficient to prevent removal. The motive for joining such a defendant is immaterial, even when the defendant is judgment-proof, or when the plaintiff is ultimately found not to have had a cause of action against the defendant. Bad faith in bringing the action is not material; bad faith in the joinder is necessary. The defendant may show bad faith in joinder by proving that the plaintiff stated the facts knowing them to be false, or with enough information within reach so that he should have known them to be false.

1A *Moore's Federal Practice,* ¶ 0.161[2] at 211–216 (2d ed. 1981). There is no allegation by defendants that plaintiffs' statement of facts concerning defendant Andrews is false. Stated another way:

> A party will be considered fraudulently joined when plaintiff has not stated a claim for relief or does not intend to secure a judgment against that defendant. But there need be only a possibility that a right to relief exists to avoid this conclusion, and plaintiff's ultimate failure to obtain a judgment is immaterial.

14 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3723 at 613–618 (1976).

If plaintiffs have stated a cause of action against Andrews sufficient to withstand a motion to dismiss under Fed.R. Civ.P. 12(b)(6), the joinder is not fraudulent. *Mabray v. Velsicol Chemical Corp.,* 480 F.Supp. 1240, 1243 (W.D.Tenn.1979). And, though a question may not be settled under state law, jurisdiction is not dependent on the ultimate resolution of the case in plaintiffs' favor but only on a reasonable possibility that they have stated a cause of action. *Id.* at 1243. Moreover, only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief" should a complaint be dismissed under Fed. R.Civ.P. 12(b)(6). *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Plaintiffs' contention that the complaint mistakenly omitted SCA's name from the allegation of conspiracy to create and maintain a nuisance together with Andrews and Earthline is supported by the later allegation in Count IV that Andrews *further* conspired with Earthline and SCA. Defendants conceded at oral argument that had SCA's name been included in the conspiracy charge, the complaint would have stated a claim against both Andrews and SCA. Suffice it to say that this Court's jurisdiction cannot hinge upon so slender a thread as a typographical error.

Defendants also argue that the statute of limitations bars any claims against Andrews, since he sold his interest in Earthline to SCA in October of 1976. Plaintiffs contend, though, that the conspiracy is a continuing wrong. Furthermore, since plaintiffs have alleged that SCA and Andrews are co-conspirators, they assert that the later acts of SCA can be attributed to Andrews as well. Lastly, though plaintiffs have not argued it, Andrews' alleged overt acts sound in fraud and deceit. Such characterization could very well toll the statute of limitations.

Defendants have not carried their burden of showing fraudulent joinder. This Court is unable to find that plaintiffs will be unable to prove a set of facts which would entitle them to relief against defendant Andrews. Accordingly, the joinder of Andrews is not fraudulent and diversity jurisdiction does not exist.

*Separate and Independent Claim*

Defendants also allege that there is removal jurisdiction because Count II of the complaint states a separate and independent claim, which if sued upon alone would support removal to this court. Without overcomplicating the matter, as defendants are wont to do, they contend that only Count II properly asserts a claim for personal injuries and that Count II is only against SCA, a nonresident defendant. Defendants further argue that Count IV, which names all three defendants, fails to state a claim for damages for personal injuries and merely states a claim for property damage. Defendants argue that a claim for personal injuries is a claim separate and independent from the claim for property damage. Therefore, defendants contend that since only SCA is properly charged with personal injury losses, that claim being separate and independent from the claims for property damage against all defendants, Count II is removable as a separate and independent claim. Accordingly, defendants claim that under the language of 28 U.S.C. § 1441(c),[1] the entire case is removable.

---

1. Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more

Defendants' arguments must fail for two reasons. First, although Count IV of plaintiffs' complaint is not a model of clarity, it does contain an allegation concerning noxious odors emanating from the site which have caused burning eyes, running noses, headaches, nausea and shortness of breath to members of plaintiffs' class. It seeks damages for personal injuries and property losses which have resulted from operation and maintenance of the nuisance. Under notice pleadings utilized in federal court, Count IV sufficiently alleges damages to both person and property against each defendant.

■ Second, even assuming that Count IV properly asserts a claim against all defendants only for property damage and that, therefore, damages for personal injuries are sought only from SCA, Count II would not be the type of separate claim which would support removal jurisdiction. The United States Supreme Court, in the leading case of *American Fire and Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), attempted to clarify the meaning of separate and independent causes of action for purposes of 28 U.S.C. § 1441(c). The Court there stated that an important purpose of the 1948 revision of § 1441(c), which adopted the separate and independent language, was to limit removal from state courts. 341 U.S. at 9–10, 71 S.Ct. at 537–38. The court concluded that where there is a single wrong to plaintiff, for which relief is sought, there is no separate and independent claim or cause of action under § 1441(c). The single wrong in *Finn* was the failure to pay on an insurance claim. The plaintiff, a Texas resident, brought his claim in the Texas state courts against two foreign insurance companies and a resident insurance agent. The insurance companies were successful in removing the case to federal court, but the Supreme Court, recognizing that the damage alleged came from a single incident, *i.e.* the refusal to pay, held that removal was improper.

In *Preas v. Phebus,* 195 F.2d 61 (10th Cir. 1952), the plaintiff Preas and one of the defendants, Equity Oil Co., were both citizens of Utah. The other defendants were citizens of states other than Utah. Plaintiff claimed an interest in an oil well and charged Equity with conversion of his oil. The other defendants claimed an interest in this same oil. The plaintiff sought an accounting as against Equity and sought to quiet title against the other defendants. The nonresident defendants removed the case, alleging, *inter alia*, that the claim against them was separate and independent from the claim against Equity. The United States Court of Appeals for the Tenth Circuit held that the case could not be removed to federal court because the quiet title claim against the diverse defendants was not separate and independent from the claim for an accounting. There was but a single wrong claimed, *i.e.* deprivation of plaintiff's rights to the oil.

In *Simon v. Gulf Coast Rental Tool Service, Inc.,* 408 F.Supp. 911 (N.D.Tex.1976), the plaintiffs brought suit against one resident (L & M Rental Co.) and one nonresident defendant (Gulf Coast Rental) in state court based upon breach of warranty and strict liability in tort. Plaintiffs were seeking certain damages to real estate from the nonresident defendant which they were not seeking from the resident defendant. The court there stated that the

facts and circumstances of Gulf Coast's alleged liability for those damages attributable to it alone and the facts and circumstances of L & M's and Gulf Coast's liability for damages attributable to both of them are so intertwined and related as to preclude a conclusion that the prayer for damages against Gulf Coast individually is a 'separate and independent' claim. To conclude that a mere prayer for those damages attributable solely to Gulf Coast bootstraps such a prayer up to the status of a 'separate and independent' claim or cause of action would be to ignore the operative facts and underlying realities of the case. In essence, this lawsuit involves a prayer for multiple damages

otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

with damages claimed against one defendant containing incidents not applicable to the other; one element of such a prayer is not sufficient to constitute a separate and independent cause of action. *Id.* at 916. *Accord Unanue v. Carribean Canneries, Inc.*, 323 F.Supp. 63, 67 (D.Del. 1971).

In the present case, the single wrong claimed by plaintiffs is the creation, operation and maintenance of a nuisance. All plaintiffs seek damages both for property losses and personal injuries. Count II of the complaint, even if construed to be the only claim for personal injury, is not a separate and independent claim.

The case of *Alexander v. Lash*, 311 F.Supp. 524 (D.Hawaii 1970), relied on by defendants, is distinguishable. There, the plaintiffs, a father and son, brought suit against a diverse defendant in state court as the result of a vehicle collision. The father sued defendant for property damage and the son sued for personal injuries. The defendant removed the action to federal court on the basis of diversity and then sought to remand the father's property damage claim, since it did not meet the requisite jurisdictional amount. The court held that there were two separate and independent causes of action and since one claim supported removal jurisdiction, the court had jurisdiction over the entire claim. In that case, each plaintiff had a different claim—the father had only property damage and the son had only personal injuries. In the present case, the plaintiffs all allege property damage and personal injuries as a result of the nuisance. Additionally, without deciding whether *Lash* was decided correctly, I note that it has never been relied upon by a single court.

Furthermore,

Most commentators agree that few, if any, diversity cases can be properly removed under Section 1441(c) in light of the construction placed on the statute by the Finn case. Even under most liberal of state joinder rules and statutes, parties are not properly joined unless there is a question of law or fact common to all of them and there is a claim asserted for or against them all arising out of the same transaction or occurrence or series of transactions or occurrences. It seems reasonable to conclude that claims involving common questions and stemming from the same transaction do not qualify as separate and independent claims or causes of action under the Supreme Court's formulation. The Finn case held that there is but a single cause of action when a single plaintiff advances alternative claims against a number of defendants arising from an interlocked series of transactions, inasmuch as there is but a single wrong to the plaintiff. Similar logic supports the argument that removal is not available when a number of plaintiffs join their claims against a single defendant arising from a common wrong allegedly committed by the latter.

In only one situation could legitimate joinder under usual state joinder rules produce a claim or cause of action removable under Finn. Assume that a California plaintiff brings suit in a California state court and properly joins a California defendant and a Texas defendant. Plaintiff then adds an entirely unrelated claim against the Texas defendant. The Texas defendant could remove under Section 1441(c). Now that it finally has been established that complete diversity of citizenship is not constitutionally required, the application of Section 1441(c) in this situation to allow removal of the entire case can be defended as a statutory grant of jurisdiction over cases in which there only is partial diversity. But, these cases appear so rarely that the utility of having a special and confusing statute to permit their removal may well be doubted.

14 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3724 at 629–30 (1976).

### Federal Question

Defendant SCA also seeks to remove the action on the basis that Count IV can be characterized as stating a federal cause of action pursuant to the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2601 *et seq.* Defendant SCA contends that the plaintiffs have disguised their complaint so that it hides a claim within the exclusive

jurisdiction of the federal courts. Defendant also argues that the federal Act preempts state law on these issues. SCA uses the concepts of exclusive jurisdiction and preemption interchangeably.

However, these concepts are not interchangeable. As Professor Moore explains,

> Federal *preemption*, . . . should be distinguished from *exclusive federal jurisdiction*. In the former, federal substantive law supplants state law but absent other provisions both state and federal courts have concurrent jurisdiction of actions arising under that law; in the latter, only the specified federal instrumentalities have jurisdiction of the matter, irrespective of the law to be applied.

1A *Moore's Federal Practice,* ¶ 0.160 at 189 (2d ed. 1981). (Emphasis original). For example, a suit involving statutory copyright or patent law is exclusively federal and only a federal court can decide such matters. A plaintiff could not attempt to disguise such a claim as a state claim and defeat Congress' intent to have such matters decided by federal courts.[2] *Hearst Corp. v. Shopping Center Network, Inc.,* 307 F.Supp. 551 (S.D.N.Y.1969).

The United States Court of Appeals for the Seventh Circuit recently delineated the general rules regarding removal based on a federal question. In *Nuclear Engineering Co. v. Scott,* 660 F.2d 241 (7th Cir. 1981) the court stated as follows:

> The specific principles applicable to pleading federal question jurisdiction are well-settled. Federal question jurisdiction is properly invoked when a plaintiff pleads a claim that 'arises under' federal law. 28 U.S.C. § 1331. A claim 'arises under' federal law when federal law supplies an essential element of the claim. E.g. *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936).

Additionally, the federal claim must generally appear on the face of the complaint, unaided by any other pleadings, including a removal petition. E.g. *Arkansas v. Kansas & Texas Coal Co.,* 183 U.S. 185, 188, 22 S.Ct. 47, 48, 46 L.Ed. 144 (1901). *American Invsco. Countryside, Inc. v. Riverdale Bank,* 596 F.2d 211, 216 (7th Cir. 1979). A qualification of this so-called 'well-pleaded complaint' rule for determining jurisdiction is that a plaintiff may not deny a defendant his right to a federal forum by artfully disguising an essentially federal law claim in terms of state law. *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 664 (7th Cir. 1976).

*Id.* at 248–49.

■ The face of plaintiffs' complaint clearly reveals an action for damages grounded upon the state common law of nuisance. Generally, a plaintiff is free to ignore a federal question and pitch his claim on a state ground, so long as no fraud is involved, thus defeating removal to the federal courts. 1A *Moore's Federal Practice,* ¶ 0.160 at 185 (2d ed. 1981); *Jones v. General Tire and Rubber Co.,* 541 F.2d 660, 664 (7th Cir. 1976). *See also, McCastle v. Rollins Environmental Services,* 514 F.Supp. 936 (M.D.La.1981) (action brought against hazardous waste disposal facility alleging it to be a nuisance was action under state law and no basis for removal jurisdiction existed.)

■ As stated above, the face of plaintiffs' complaint reveals a cause of action based solely upon the state common law of nuisance. Moreover, there is a body of law which holds that a claim by a defendant that federal law preempts the field does not support removal jurisdiction.[3] *See Nalore v. San Diego Federal Savings and Loan Ass'n,* 663 F.2d 841 (9th Cir. 1981); *Schultz v. Coral Gables Federal Savings and Loan*

---

**2.** However, if the removed action was one within the exclusive jurisdiction of the federal courts, dismissal and not remand is mandated because of the derivative nature of removal jurisdiction. 1A *Moore's Federal Practice* ¶ 0.160 at 189 n.25. (2d ed. 1981).

**3.** There is a body of law which holds the opposite, *i.e.* that preemption of state law provides a

basis for removal jurisdiction. *See First National Bank of Aberdeen v. Aberdeen National Bank,* 627 F.2d 843, 850–51 (8th Cir. 1980)(collecting cases). However, the more recent and better-reasoned cases hold that preemption is a defense which does not confer removal jurisdiction on a federal court.

*Ass'n.*, 505 F.Supp. 1003, 1009 (S.D.Fla. 1981); *Smart v. First Federal Savings and Loan Ass'n of Detroit*, 500 F.Supp. 1147, 1156 (E.D.Mich.1980); and, *Freeman v. Colonial Liquors, Inc.*, 502 F.Supp. 367 (D.Md. 1980). "Federal preemption is ordinarily a matter to be raised in defense. Taken alone, it is not a basis for removal." *Guinasso v. Pacific First Federal Savings and Loan Ass'n.*, 656 F.2d 1364, 1366 (9th Cir. 1981) (citations omitted). "[W]hen the claim presents a prima-facie basis for relief entirely under state law, the preemption defense dos not support federal jurisdiction." *Id.* at 1367. *Accord, First National Bank of Aberdeen v. Aberdeen National Bank*, 627 F.2d 843, 850–53 (8th Cir. 1980); *Madsen v. Prudential Savings and Loan Ass'n.*, 635 F.2d 797 (10th Cir. 1980), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 3891 (1981); *Eure v. NVF Co.*, 481 F.Supp. 639, 642–44 (E.D.N.C.1979); *Marquette National Bank v. First National Bank of Omaha*, 422 F.Supp. 1346, 1352–53 (D.Minn.1976). Plaintiffs' claims here are based solely on the state common law of nuisance. Defendants' preemption claim does not confer jurisdiction on this court. In *Mabray v. Velsicol Chemical Corp.*, 480 F.Supp. 1240 (W.D.Tenn.1979), the plaintiff was a former Memphis city employee at the North Memphis Waste Water Treatment Plant who allegedly was exposed, without her knowledge, to high levels of toxic chemicals discharged into the city waste water system by defendant Velsicol. During the alleged exposure, plaintiff became pregnant and subsequently, because of the risk to the fetus' health, underwent an abortion. Plaintiff sued the city and Velsicol for common law negligence in their handling of the chemicals and for creation of a public nuisance. Velsicol sought to remove the case to federal court on several grounds, including that plaintiff had concealed a federal question under the FWPCA. The court held, however, that plaintiff's complaint presented claims sounding only in tort; that no federal questions were presented or even vaguely implicated. Her claims were based on (1) common law negligence in the handling and disposition of toxic chemicals, and failing to warn her of the dangers to which she was exposed; and, (2) the creation of a public nuisance. Plaintiff also sought punitive damages. 480 F.Supp. at 1245. The court further stated:

> If Velsicol is able to prove its allegations that it discharged the instant chemicals pursuant to a valid NPDES permit issued under the FWCPA (sic), it may well have an absolute defense to plaintiff's tort claims, as it contends. Plaintiff would still be free, however, to present proof that Velsicol negligently violated the standards and limitations contained in the permit, which may be a federal question; but, the nuisance allegations and claims of malicious conduct would not necessarily be federal. Assertion of the NPDES permit would come as a *defense* and plaintiff is not bound to anticipate such defense. Requiring plaintiff to bring her case in federal court against her will on the possibility that Velsicol will be. successful in this defense seems contrary to the general principles summarized above.

*Id.* at 1245.

Even though remand is clearly mandated under the rationale that preemption is a defense which does not confer removal jurisdiction on this Court, an analysis of the statute leads to the conclusion that the TSCA, in any event, does not preempt the state law nuisance actions.

The TSCA is a complex statute designed to protect individuals and the environment from the unreasonable risk of injuries which result from, *inter alia*, manufacturing, using and disposing of chemical substances. The Administrator of the EPA is given the authority to regulate activities involving chemical substances which pose such an unreasonable risk. 15 U.S.C. § 2605(a).

The effect of this statute on state law is set forth in 15 U.S.C. § 2617.[4] Basically,

---

4. Preemption

(a) Effect on State law.—(1) Except as provided in paragraph (2), nothing in this chapter shall affect the authority of any State or political subdivision of a State to establish or continue in effect regulation of any chemical sub-

this section provides that the states' authority to regulate chemical substances is not affected, except for certain specified limitations. Those limitations are: (1) if the Administrator has required by rule the testing of a chemical substance or mixture, thereafter no state or political subdivision may require testing for purposes similar to those required under the rule; (2) if the Administrator prescribes a rule or order under sections 2604 or 2605 (*other than a rule imposing a requirement described in § 2605(a)(6)*) which applies to a chemical substance and which is designed to protect against a risk of injury to health or the environment associated with such substance, then no state or political subdivision may, after the effective date of such requirement, either establish or continue in effect any requirement concerning such substances unless such requirement (i) is identical to the requirement prescribed by the Administrator, (ii) is adopted under the authority of the Clean Air Act or any other federal law, or (iii) bans the use of such substances within the territorial jurisdiction of the state. A state may also apply for

exemption from the preemption provisions of the statute if compliance with the state's requirements would not cause a violation of the TSCA, if the requirements are *more stringent* and thus afford a significantly higher degree of protection to individuals and the environment, and undue burdens on interstate commerce would not result.

Thus, automatic exemption from preemption results where a state's requirement is identical to that of the Administrator, is adopted under the authority of other federal laws or bans the use of such substances. A state may apply for exemption from the preemptive provisions of the Act if the state's requirement would not cause a violation of the TSCA and the requirement provides a higher degree of protection and does not unduly burden interstate commerce. Moreover, only the rules prescribed under sections other than § 2605(a)(6) have a preemptive effect. Section 2605(a)(6) relates to the *disposal* of chemical substances.

Section 2605(a)(6)(A) permits the Administrator to promulgate regulations regarding the disposal of chemical sub-

stance, mixture, or article containing a chemical substance or mixture.

(2) Except as provided in subsection (b) of this section—

(A) if the Administrator requires by a rule promulgated under section 2603 of this title the testing of a chemical substance or mixture, no State or political subdivision may, after the effective date of such rule, establish or continue in effect a requirement for the testing of such substance or mixture for purposes similar to those for which testing is required under such rule; and

(B) if the Administrator prescribes a rule or order under section 2604 or 2605 of this title (other than a rule imposing a requirement described in subsection (a)(6) of section 2605 of this title) which is applicable to a chemical substance or mixture, and which is designed to protect against a risk of injury to health or the environment associated with such substance or mixture, no State or political subdivision of a State may, after the effective date of such requirement, establish or continue in effect, any requirement which is applicable to such substance or mixture, or an article containing such substance or mixture, and which is designed to protect against such risk unless such requirement (i) is identical to the requirement prescribed by the Administrator, (ii) is adopted under the authority of the

Clean Air Act or any other Federal law, or (iii) prohibits the use of such substance or mixture in such State or political subdivision (other than its use in the manufacture or processing of other substances or mixtures).

(b) Exemption—Upon application of a State or political subdivision of a State the Administrator may by rule exempt from subsection (a)(2) of this section, under such conditions as may be prescribed in such rule, a requirement of such State or political subdivision designed to protect against a risk of injury to health or the environment associated with a chemical substance, mixture, or article containing a chemical substance or mixture if—

(1) compliance with the requirement would not cause the manufacturing, processing, distribution in commerce, or use of the substance, mixture, or article to be in violation of the applicable requirement under this chapter described in subsection (a)(2) of this section, and

(2) the State or political subdivision requirement (A) provides a significantly *higher degree* of protection from such risk than the requirement under this chapter described in subsection (a)(2) of this section and (B) does not, through difficulties in marketing, distribution, or other factors, unduly burden interstate commerce.

15 U.S.C. § 2617.

stances. However, § 2605(a)(6)(B) provides that any such regulation may not require any person to take any action which would violate any state law or requirement. When read in conjunction with the parenthetical language of § 2617(a)(2)(B), it is reasonable to conclude that state laws relating to *disposal* of chemical substances are not preempted by the TSCA. Section 2617(a)(2)(B) provides that "if the Administrator prescribes a rule or order under Section 2604 or 2605 of this title (other than a rule imposing a requirement described in subsection (a)(6) of section 2605 of this title)," then no state may establish requirements except in the exempt situations discussed above.

Moreover, EPA's own position is that state requirements regarding disposal of PCB's are completely exempt from federal preemption insofar as they prescribe what may be done within state boundaries, so long as the method of disposal is not less restrictive than prescribed by EPA regulations. 43 Fed.Reg. at 7153–54, *quoted in SED, Inc. v. City of Dayton*, 519 F.Supp. 975, 986 (S.D.Ohio 1981). "[I]n the EPA's view, the reference to section 2605(a)(6) in section 2617(a)(2)(B) is an absolute limitation on section 2617(a)(2)(B). Essentially, the EPA says that section 2605(a)(6) has priority over section 2617(a)(2)(B), and, as a result, there can be no federal preemption of local disposal requirements." 519 F.Supp. at 986. Furthermore, the court in *SED, Inc.* quotes one authority as follows:

> The exception for state regulation is clear. Regardless of EPA regulatory action under the Act, state or local governments are not preempted from regulating the disposal of chemical substances or mixtures. In addition, there is a type of reverse preemption concerning regulation of disposal. EPA may not take any action to regulate the disposal of a substance or mixture under the Toxic Substances Control Act that is inconsistent with any state or local requirements or requirement under another federal law.

519 F.Supp. at 985, *quoting* Druley & Ordway, *The Toxic Substances Control Act*, [Monograph Binder] Envir.Rep.(BNA) No. 24 at 31 (1977).

Judge Rice, in a comprehensive opinion in *SED, Inc.*, concluded that if EPA's rules related only to disposal of PCB's, then state and local regulations would not be preempted. However, once EPA prescribes requirements for matters other than disposal, then all local regulation, including that related to disposal, is preempted. Although the matter is far from clear, as Judge Rice's learned opinion evidences, in a situation such as this, where an argument can be made equally well on either side, the agency's own interpretation of the statute is entitled to great deference. EPA's position is that TSCA does not preempt local disposal requirements. Moreover, plaintiffs rely on the citizens' suit provision of the statute, 15 U.S.C. § 2619, as support for their position that common law nuisance actions are not preempted by the TSCA. That section provides that any person may commence a civil action to restrain violations of the TSCA and rules prescribed thereunder in the United States district court. However, § 2619(c)(3) provides that "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of this chapter or any rule or order under this chapter or to seek any other relief."

Defendant responds that a recent United States Supreme Court decision interpreting a similar provision of the Federal Water Pollution Control Act (FWPCA) held that notwithstanding the citizens' suit provision, other sections of that act could still have a preemptive effect. In *Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), the state of Illinois had instituted an action against the city of Milwaukee, seeking abatement of a nuisance caused by interstate water pollution. The complaint was premised upon federal common law as well as Illinois statutory and common law. The Court held that the Federal Water Pollution Control Act Amendments of 1972 supplanted *federal* common law on the issue of interstate water pollution. "[T]he issue before us is simply whether federal legislation has supplanted federal common law. The question wheth-

er state law is also available is the subject of Illinois' petition for certiorari, No. 79–571." *Id.* at 310 n.4, 101 S.Ct. at 1789 n.4. The Court denied certiorari on the question of whether state law was available to plaintiff. *Illinois v. Milwaukee,* 451 U.S. 982, 101 S.Ct. 2313, 68 L.Ed.2d 839 (1981).

In addressing the argument made by respondents that sections 510 and 505(e) of the Act preserved the federal common-law remedy recognized prior to enactment of the 1972 amendments to FWPCA, the Court stated:

> Section 510 provides that nothing in the Act shall preclude states from adopting and enforcing limitations on the discharge of pollutants more stringent than those adopted under the Act. [As noted above, under the TSCA states can adopt requirements which are more protective than EPA's regulation]. It is one thing, however, to say that States may adopt more stringent limitations through state administrative processes, or even that States may establish such limitations through state nuisance law and apply them to in-state discharges. It is quite another to say that the States may call upon *federal courts* to employ *federal* common law to establish more stringent standards applicable to out-of-state discharges.

*Id.* 451 U.S. at 327–28, 101 S.Ct. at 1797–98. (Emphasis original). While the majority opinion did restrictively interpret the citizens' suit provisions of the FWPCA by holding that the citizens' suit provision itself does not preempt other available remedies, but that other provisions of that Act could preempt such remedies, the Court's reasoning does not apply here for two reasons.

First, as discussed at length above, the substantive provisions of the TSCA do not preempt disposal regulation by the states. Second, the Supreme Court's opinion is limited solely to the question of whether federal legislation supplanted federal common law.

The legislative history of the TSCA indicates that the citizens' suit provision therein was modeled after similar provisions in, *inter alia,* the FWPCA. S.Rep.No.94–698,

94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 4491, 4499. The legislative history of the 1972 Amendments to the FWPCA relating to citizens' suits states that "the section would specifically preserve any rights or remedies under any other law. Thus, if damages could be shown, other remedies would remain available. Compliance with requirements under this Act would not be a defense to a common law action for pollution damages." S.Rep.No. 92–414, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Ad.News 3668, 3746–47.

Additionally, the citizens' suit provision provides that any person may commence a civil action (1) against any person who is alleged to be in violation of the TSCA *to restrain such violation,* or (2) against the Administrator to compel him to perform his nondiscretionary duties under the Act. Section 2615 provides for the imposition of civil and criminal penalties for violations of the Act, the fines being payable to the United States. Although neither the defendants nor the plaintiffs have analyzed the TSCA in any depth, it appears that there is no provision for an action for damages for past violations of the Act.

The United States Court of Appeals for the Seventh Circuit recently interpreted the citizens' suit provision of the FWPCA in *City of Evansville v. Kentucky Liquid Recycling, Inc.,* 604 F.2d 1008 (7th Cir. 1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980)., As noted above, the citizens' suit provision of the TSCA was modeled upon that of the FWPCA. In a private suit under § 505(a) of the FWPCA [33 U.S.C. § 1365(a)], a private citizen may seek to enforce compliance with the standards set forth in the Act and regulations or to compel the Administrator to perform a duty. A court may also impose civil penalties under 33 U.S.C. § 1319(d). 604 F.2d at 1015–16. The court concluded that plaintiffs did not carry their burden of establishing that Congress intended to create a private right of action for damages against a violator of the FWPCA in favor of a person injured by pollutant discharges. 604 F.2d at 1016. The court held, however, that a

claim for damages could be entertained under the federal common law of nuisance. Although the Supreme Court later held that the 1972 Amendments to the FWPCA supplanted *federal* common law in *Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), discussed *supra*, the Seventh Circuit's rationale concerning damage actions is still applicable. Moreover, as discussed above, the Supreme Court did not reach the question of whether state common law was available to plaintiffs. *But see Scott v. City of Hammond*, 519 F.Supp. 292 (N.D.Ill.1981), holding specifically that state common law nuisance action was available in suit based on interstate water pollution.

■ In light of the Seventh Circuit's interpretation of the virtually identical citizens' suit provision of the FWPCA, it would appear that a state common law nuisance action may be the only way plaintiffs can recover for any damages which have accrued to them. In sum, it appears to the court that the TSCA does not preempt state common law nuisance actions for damages.

### Conclusion

For the reasons stated above, the Court concludes that it has neither diversity nor federal question jurisdiction over this action. Moreover, there is no separate and independent claim contained in the complaint. When considering that "doubts arising from defective, ambiguous and unartful pleadings should be resolved in favor of the retention of state court jurisdiction," this Court has no choice but to remand this case to the state courts. *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61, 65, *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957) *quoted in Mabray v. Velsicol Chemical Corp.*, 480 F.Supp. 1240, 1244 (W.D.Tenn.1979). Consequently, removal to this Court was improvident and the case is hereby ordered remanded to the Macoupin County Circuit Court.