Merlyn KNAPP, Appellant,

v.

The WILSON N. JONES MEMORIAL HOSPITAL d/b/a Wilson N. Jones Regional Health System, Appellee.

No. 05–07–00507–CV.

Court of Appeals of Texas, Dallas.

Feb. 17, 2009.

Rehearing Overruled May 8, 2009.

David Rankin, Nacogdoches, TX, Kirk L. Pittard, Durham & Pitard, LLP, Dallas, TX, for Appellant.

John B. Kyle, Kim A. Lucas, Kyle, Campbell, Mathis & Lucas, LLP, Dallas, TX, Bruce W. Bowman, Jr., Godwin, Pappas, Langley & Ronquillo, L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, FITZGERALD, and LANG.

## OPINION ON REHEARING

Opinion by Justice LANG.

After issuing our opinion of August 26, 2008, Merlyn Knapp filed a motion for rehearing. For the reasons stated in this opinion on rehearing, Knapp's motion for rehearing is denied. Also, on the Court's own motion, we withdraw our original opinion of August 26, 2008 and vacate our judgment. This opinion on rehearing is now the opinion of the Court.

Knapp appeals the trial court's final judgment. After a trial, the jury found against Knapp on his claim for breach of contract and in favor of the Wilson N. Jones Memorial Hospital d/b/a Wilson N. Jones Regional Health System (WNJ) on its counterclaims for breach of contract,

breach of fiduciary duty, fraud, and negligence. WNJ was awarded $101,569 in damages, $939,000 in attorneys' fees, and $30,074.72 in prejudgment interest.

In six issues,[1] in his brief on appeal, Knapp argues: (1) the evidence is legally and factually insufficient to support the jury finding against him for breach of contract; (2) the trial court erred when it ruled not discoverable (a) the WNJ board meeting minutes and financial documents because they were privileged and (b) the documents and depositions relating to WNJ's arbitration proceedings against Ernst & Young, L.L.P., because they were confidential; (3) the trial court erred when it ruled the following were not admissible at trial (a) the WNJ board meeting minutes and (b) the arbitration statement and award; (4) the trial court erred when it instructed the jury it could consider post-termination, after-acquired evidence when determining whether Knapp was terminated for cause; (5) the trial court erred when it denied Knapp's request for the damages against him to be offset by the amount awarded to WNJ in the arbitration proceeding; and (6) the trial court erred when it denied Knapp's post-verdict motion for leave to file an amended pleading because the parties had agreed to submit the issue of offset to the trial court.

The portion of the trial court's final judgment ordering that Knapp take nothing as to his breach of contract claim against WNJ is affirmed. The portion of the trial court's final judgment awarding judgment to WNJ on its counterclaims against Knapp is reversed. The cause is remanded for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

WNJ terminated the employment of Knapp, its chief financial officer. According to Knapp's employment agreement he was entitled to severance benefits, unless he was terminated for cause. After Knapp was first notified of his termination, he demanded severance benefits. Then, WNJ claimed it discovered evidence of unauthorized bonuses to hospital employees, a loan made by Knapp on WNJ's behalf to a supplier, which was not disclosed to the board, and the write-off of that loan. The board of directors informed Knapp his termination was for cause. Based on the evidence of unauthorized bonuses, and the undisclosed loan and write-off, the board of directors pursued claims against Ernst & Young, its auditors, through arbitration and obtained an arbitration award.

Knapp sued WNJ for breach of contract, theft and conversion, and fraud, alleging WNJ failed to pay his contractual severance benefits. WNJ asserted, as a defense, it was not liable because it had cause to terminate Knapp and the after-acquired evidence doctrine permitted WNJ to use the evidence acquired after Knapp's termination to establish it had cause to terminate him. WNJ moved for partial summary judgment on Knapp's claims for theft and conversion, and fraud, which the trial court granted.

After partial summary judgment was granted, WNJ filed counterclaims for breach of contract, breach of fiduciary duties, negligent misrepresentation, conversion, gross negligence, and fraud. WNJ alleged Knapp participated in funding a loan without the board's approval, partici-

---

1. Although Knapp lists seven issues in the "Issue Presented" section of his brief, in the "Table of Contents" and "Argument" sections of his brief, he only argues six issues. We refer to the issues by numbers that correspond to the "Table of Contents" and "Arguments" section of the brief.

pated in a fraudulent scheme to pay bonuses to himself and other employees in excess of the bonuses authorized by the board, and mismanaged the financial affairs of WNJ by authoring monthly and annual financial reports that misstated the financial condition of WNJ.

Before trial, there were several discovery disputes as to whether certain documents were protected by the attorney-client privilege and the documents respecting the arbitration with Ernst & Young were confidential. Knapp was denied discovery of these documents, with the exception that he was permitted to discover the arbitration award and arbitration statement of claims filed by WNJ in the arbitration. After the trial, the jury found against Knapp on his claim for breach of contract and in favor of WNJ on its counterclaims.

## II. KNAPP'S CLAIM FOR BREACH OF CONTRACT

Knapp does not specify which issues relate to his claim for breach of contract against WNJ. However, we construe the first part of issue two, the first part of issue three, and issue four in Knapp's brief

on appeal as pertaining to the portion of the trial court's take-nothing judgment on Knapp's claim against WNJ for breach of contract.[2]

### A. Discovery of the Privileged Documents

In the first part of issue two in his brief on appeal, Knapp argues the trial court erred when it ruled the WNJ board meeting minutes and financial documents were privileged. In the first part of issue three in his brief, Knapp argues the trial court erred when it ruled the WNJ board meeting minutes were not admissible at trial.

During the course of discovery, WNJ withheld certain documents and redacted portions of documents based on the attorney-client privilege. On January 21, 2005, Knapp filed a motion to compel, requesting the trial court to order WNJ to produce unredacted copies of the documents. WNJ submitted these documents to the trial court for an *in camera* inspection. The trial court denied Knapp's motion to compel, concluding the documents were protected by the attorney-client privilege and the privilege had not been waived by offensive use.[3]

2. Knapp alleged WNJ failed to pay his contractual severance benefits. WNJ asserted, as a defense to Knapp's breach of contract claim, it was not liable because it had cause to terminate Knapp and the after-acquired evidence doctrine permitted WNJ to use evidence acquired after Knapp's termination to establish it had cause to terminate him.

In the first part of issue two, Knapp argues the trial court erred when it ruled the WNJ board meeting minutes and financial documents were privileged. Knapp claims:

[t]he documents that the trial court ruled were privileged were outcome determinative of the allegations of willful misconduct asserted by WNJ against Knapp in this case. That is to say, if evidence demonstrated that WNJ had voted to pay Knapp his severance benefits, such evidence demonstrates that he was not terminated for cause.

In the first part of issue three, Knapp argues the trial court erred when it ruled the WNJ board meeting minutes were not admissible at trial. In issue four, Knapp argues trial court erred when it instructed the jury it could consider post-termination, after-acquired evidence when determining whether Knapp was terminated for cause.

Because these issues relate to WNJ's defense of cause based on the after-acquired evidence doctrine, we construe the first part of issue two, the first part of issue three, and issue four as pertaining to the portion of the trial court's take-nothing judgment addressing Knapp's claim against WNJ for breach of contract.

3. On March 14, 2005, the trial court denied Knapp's motion to compel by letter, concluding the documents were protected by the attorney-client privilege. This letter is not in-

On April 25, 2005, Knapp filed a motion for reconsideration of the order denying his motion to compel unredacted copies of the board of director and audit/finance committee meeting minutes. On August 28, 2005, Knapp filed a motion to compel the meeting minutes for reasons of crime fraud. On September 21, 2005, WNJ filed a motion for the return of privileged documents belonging to WJN and for sanctions, arguing the privileged documents were also submitted for *in camera* review in a separate suit WNJ filed against its chief executive officer, but the clerk failed to segregate the privileged documents and placed them in the main file. WNJ claimed it learned of the clerk's error when Knapp's counsel attached copies of the privileged documents to Knapp's motions.

On November 2, 2005, the trial court held a hearing on Knapp's motion for reconsideration and motion to compel for reasons of crime fraud, and WNJ's motion to return privileged documents belonging to WJN. After the hearing, the trial court denied Knapp's motions and granted WNJ's motion to enforce, requiring Knapp to return the privileged documents to the trial court in a sealed envelope within seven days.

On February 15, 2006, Knapp filed a petition for a writ of mandamus challenging the trial court's orders. While Knapp's petition for a writ of mandamus was pending, WNJ filed, in the trial court, a motion to enforce the trial court's November 2, 2005 order, which required Knapp to return the privileged documents to WNJ. On March 6, 2006, this Court denied Knapp's petition for a writ of mandamus. *See In re Knapp*, No. 05–06–00202–CV, 2006 WL 531287 (Tex.App.-Dallas Mar. 6, 2006, orig. proceeding [mand. denied] ) (mem. op.).[4]

cluded in the clerk's record, but is referenced in Knapp's April 25, 2005 motion to compel unredacted copies of the board of director and audit/finance committee meeting minutes. On July 18, 2005, the trial court signed an order denying Knapp's January 21, 2005 motion to compel, which was previously denied in a letter, concluding the documents were protected by the attorney-client privilege and the privilege had not been waived by offensive use.

4. After this Court's mandamus opinion issued, WNJ filed, in this Court, a motion to strike or, in the alternative, to seal the privileged documents, which were attached to Knapp's petition for a writ of mandamus, in the record, and referred to and quoted in his petition for mandamus and reply to the response. On March 27, 2006, this Court designated the privileged documents as *in camera* documents, ordered the court reporter to retrieve the *in camera* documents, and ordered that the *in camera* documents were "not to be used or disseminated by the parties, the official court reporter of the 59th Judicial District Court, or anyone else who might come in contact with them, except as hereafter directed by the judge of the 59th Judicial District Court." On April 27, 2006, the trial court sealed all documents it previously had found to be privileged.

However, we note that despite this Court's March 27, 2006 order and the trial court's April 27, 2006 order, on November 13, 2007, Knapp filed his brief and appendix in this appeal. On November 21, 2007, WNJ filed a motion to withdraw documents or, in the alternative, to seal privileged documents and for sanctions because Knapp's appendix contained the privileged or *in camera* documents. On December 13, 2007, this Court granted WNJ's motion, striking Knapp's brief, and ordered Knapp to file an amended brief that did not include the *in camera* documents. This Court instructed Knapp that, if he wished to use the *in camera* documents as part of his appendix, he must file a separate appendix under seal. On December 17, 2007, Knapp filed his amended brief. He did not file a separate appendix under seal. Further, on October 25, 2007, the court reporter filed an unsealed supplemental reporter's record, which included some of the *in camera* documents. In a separate order issued with this opinion, we have again designated those documents as *in camera* documents.

On April 27, 2006, after a hearing, the trial court granted WNJ's motion to enforce and for sanctions.[5] The trial court imposed the following sanctions: (1) fined Knapp's counsel $12,500; (2) sealed all documents the trial court previously found to be privileged; (3) prohibited Knapp from using or attaching any of the privileged documents in any manner during the pendency of the case; (4) prohibited Knapp from using any of the privileged documents, even if the documents were determined not to be privileged on appeal; and (5) prohibited Knapp and his counsel from disclosing the privileged documents or their content. Knapp filed a second petition for a writ of mandamus challenging the trial court's April 27, 2006 order imposing sanctions. On June 13, 2006, this Court denied Knapp's second petition for a writ of mandamus. *See In re Knapp*, No. 05-06-00741-CV, 2006 WL 1624490 (Tex. App.-Dallas Jun.13, 2006, orig. proceeding).

On appeal, Knapp argues the trial court erred when it denied his motions to compel and motion to reconsider, which concluded the documents were privileged and when it ruled the board meeting minutes were not admissible. However, one of the sanctions imposed against Knapp by the trial court in its April 27, 2006 order prohibits him from using any of the privileged documents, even if the documents were determined not to be protected from discovery by the attorney-client privilege on appeal. Knapp has not appealed the trial court's order imposing these sanctions and any complaint he may have had about that order is waived.[6] As a result, even if we

5. In his motion for rehearing, Knapp argues the trial court's order imposing sanctions was not included in the record on appeal and the Court is prohibited from considering a document that is not a part of the appellate record. A copy of the order imposing sanctions was attached to the motion to withdraw described in footnote 4 above. Nonetheless, in accordance with our authority to supplement the record, we ordered the Grayson County District Clerk to file a supplemental clerk's record containing the trial court's April 27, 2006 order imposing sanctions. *See* Tex R.App. P. 34.5(c)(1), (3). The district clerk certified the order was never received by the district clerk's office. *See* Tex.R.App. P. 34.5(e). Accordingly, we: (1) ordered the trial court to conduct a hearing and make written findings of fact to determine what constitutes an accurate copy of the trial court's order, if any; and (2) abated the appeal. *See* Tex.R.App. P. 34.5(e).

On January 20, 2009, a supplemental clerk's record was filed containing the trial court's findings of fact, which stated the parties stipulated to the trial court's April 27, 2006 "Order on Motion to Enforce and for Sanctions" and attached a copy of that order. On January 26, 2009, this Court ordered the appeal reinstated.

We have compared the trial court's April 27, 2006 "Order on Motion to Enforce and

for Sanctions," which document counsel stipulated to and is contained in the supplemental clerk's record, with the order attached to WNJ's November 21, 2007 motion to withdraw. These orders are identical. Knapp has not made any contention these orders are different.

6. In his motion for rehearing, Knapp requests that if we obtain a supplemental clerk's record containing the trial court's April 27, 2006 order imposing sanctions, "the Court set a briefing schedule so that the parties will have the opportunity to fully brief the issues related to the April 27 Order." Knapp makes several assertions in an to attempt to demonstrate his second appellate counsel, who became involved after the notice of appeal and the designation of the record, did not know of the contents of the trial court's order imposing sanctions and therefore, did not raise issues on appeal as to that order.

However, the record shows on April 30, 2007, Knapp filed his notice of appeal stating he was appealing the trial court's "Final Judgment signed on February 22, 2007." The notice of appeal was signed by Knapp's trial counsel. *See* Tex.R.App. P. 6.1(a) (unless another attorney designated, lead counsel for appellant is attorney whose signature first appears on notice of appeal). On April 30, 2007, Knapp filed his docketing statement,

were to conclude the documents were not privileged, WNJ waived the privilege, or the trial court erred when it ruled the documents were not admissible, Knapp is prohibited from using these documents. Accordingly, we need not decide the merits of the first part of issue two or the first part of issue three in Knapp's brief on appeal.

### B. Jury Charge Error

In issue four in his brief on appeal, Knapp argues the trial court erred when it instructed the jury it could consider post-termination, after-acquired evidence when determining whether Knapp was terminated for cause. WNJ responds that the jury found it had cause for terminating Knapp and, as a result, it did not breach the contract.

Texas Rule of Appellate Procedure 33.1 establishes the prerequisites for preserving an appellate complaint. To preserve a point for appellate review, a party must make a timely, specific objection or motion to the trial court that states the grounds for the ruling sought with sufficient specificity, unless the grounds are apparent from the context, obtain a ruling on the complaint, and comply with the rules of evidence or procedure. TEX. R.APP. P. 33.1. Complaints and arguments on appeal must correspond with the complaint made at the trial court level. *See Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890 S.W.2d 118, 124 (Tex.App.-Texarkana 1994, writ denied). To preserve an error for appeal, a party's argument on appeal must comport with its argument in the trial court. *See Wohlfahrt v. Holloway*, 172 S.W.3d 630, 640 (Tex.App.-Houston [14th Dist.] 2005, no

---

which listed his trial counsel as lead counsel on appeal.

On May 24, 2007, Knapp's trial and first appellate counsel, filed Knapp's designation of documents for the clerk's record, which specifically requested the trial court's "Order on Motion to Enforce and for Sanctions" to be included. On July 3, 2007, the clerk's record was filed and the index to volume one states "Order on Motion to Enforce and for Sanctions–NOT FILED IN CLERK'S OFFICE."

On November 21, 2007, WNJ filed in this appeal, a motion to withdraw documents or, in the alternative, to seal privileged documents and for sanctions, and attached to that motion was a copy of the 59th Judicial District Court's April 27, 2006 order imposing sanctions. The certificate of service on WNJ's November 21, 2007 motion indicates a copy was sent to Knapp's first appellate counsel. *See* TEX.R.APP. P. 6.3(a) (communications must be sent to each party's lead counsel on appeal). The body of WNJ's November 21, 2007 motion to withdraw specifically stated:

Judge Ashworth, because of Appellant's discovery abuse and failure to comply with prior court orders, sanctioned Appellant's counsel in the amount of $12,500 and **ordered that the documents not be used in any proceeding.** (See Judge Ashworth's Order attached hereto as Exhibit "C").

(emphasis added.). Knapp's response to WNJ's motion to withdraw was signed by Knapp's second appellate counsel. Knapp's amended brief was filed on December 17, 2007 and listed his second appellate counsel as well as trial counsel and was signed by his second appellate counsel.

Although the clerk's record shows the trial court's order imposing sanctions was omitted, there is nothing in the record showing Knapp took any steps to supplement the clerk's record with the missing order, such as directing the trial court clerk to supplement the record with the omitted order, attempting to agree with WNJ to stipulate to the missing order, or filing a motion requesting the trial court to determine what constituted an accurate copy of the missing order. *See* TEX R.APP. P. 34.5(c)(1), (e). WNJ's motion to withdraw was sent to the appropriate lead appellate counsel at the time the motion was filed. WNJ's motion clearly referred to the specific, operative terms of the April 27, 2006 order imposing sanctions. We cannot agree with Knapp that he should be allowed to reopen this case and assert new issues as to the April 27, 2006 order imposing sanctions.

pet.), *cert. denied,* 549 U.S. 1052, 127 S.Ct. 666, 166 L.Ed.2d 514 (2006).

■ Knapp objected to question one of the jury charge as follows:

Regarding question number one, Your Honor, [Knapp] objects to question number one because it is defective in that it co-mingles the law regarding employment contracts with that of at-will employment in submitting the instruction concerning the employee's misconduct.

Specifically, the instruction regarding an employee's misconduct is only applicable to contract actions where the employer's right to terminate the employee is limited in some meaningful way which is taking the contract out of the at-will context. Such is not the case here.

[Knapp] further objects to the submission of the instruction concerning an employee's misconduct because the instruction is, in fact, a defense to the contract action by the employee which should be submitted as a defense and not combined with the compliance question on the contract.

[Knapp] suggests that the question be split such that a compliance question is asked separately for Merlyn Knapp, and that the compliance question with regard to [WNJ] not be submitted because it is improper in that the contract does not provide a provision or method by which [WNJ] can sue Mr. Knapp to recover damages under the [sic] at-will employment.

That concludes our objections to question number one.

7. WNJ brought counterclaims against Knapp for breach of contract, breach of fiduciary duties, negligent misrepresentation, conversion, gross negligence, and fraud. WNJ alleged Knapp participated in funding a loan without the board's approval, participated in a fraudulent scheme to pay bonuses to himself and other employees in excess of the bonuses

The trial court overruled Knapp's objections.

However, on appeal, Knapp argues the employment agreement shows the objective intent of the parties was that he should receive severance benefits unless, immediately at the time of termination, WNJ determined he had engaged in misconduct as defined in the agreement. Also, he argues the trial court's instruction that when interpreting the employment agreement, a "cause" determination could be made by WNJ at any time after it terminated Knapp's employment, was inconsistent with the express terms of the employment agreement and the law regarding after-acquired evidence.

Knapp's objection in the trial court did not apprize the trial court of the alleged error he now complains of on appeal. We conclude Knapp failed to preserve the issue for review because his issue on appeal does not comport with his objections made at trial. TEX.R.APP. P. 33.1.

Issue four in Knapp's brief on appeal has not been preserved for appellate review.

### III. WNJ'S COUNTERCLAIMS AGAINST KNAPP

Knapp does not specify which issues relate to WNJ's counterclaims for breach of contract, breach of fiduciary duty, fraud, and negligence. However, we construe issue one, the second part of issue two, the second part of issue three, and issues five through six in Knapp's brief on appeal as pertaining to WNJ's counterclaims.[7]

authorized by the board, and mismanaged the financial affairs of WNJ by authoring monthly and annual financial reports that misstated the financial condition of WNJ.

In issue one, Knapp argues the evidence is legally and factually insufficient to support the jury's finding that he breached the contract. In the second part of issue two, Knapp

## B. Confidentiality of Arbitration Documents

In the second part of issue two in his brief on appeal, Knapp argues the trial court erred when it ruled the documents and depositions relating to WNJ's arbitration proceedings against Ernst & Young were confidential. Knapp contends the testimony of WNJ's witnesses at trial may have been inconsistent with their testimony before the arbitrator, but he was prohibited from ascertaining this information and impeaching WNJ's witnesses because the trial court denied his motion to compel discovery relating to the arbitration proceedings. We construe Knapp's contentions as a claim that the trial court erred when it denied, in part, Knapp's motion to compel the production of documents and to compel witnesses Gail Utter and Bill Benton to answer deposition questions. WNJ responds that any information relating to the arbitration is confidential pursuant to section 154.073 of the Texas Civil Practice and Remedies Code, rule 10 of the Rules of the American Arbitration Association, the confidentiality agreement between WNJ and Ernst & Young, and the letter of engagement between WNJ and Ernst & Young.

### 1. Standard of Review

■ An appellate court reviews a trial court's ruling on a motion to compel discovery under an abuse-of-discretion standard. *See Johnson v. Davis,* 178 S.W.3d 230, 242 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (citing *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex.2004) (discussing discovery sanctions)). Trial courts have broad discretion in matters of discovery. *See Johnson,* 178 S.W.3d at 242. An appellate court should reverse a trial court's ruling on a motion to compel only when the court acts in an arbitrary and unreasonable manner, without reference to any guiding principles. *See Barnett v. County of Dallas,* 175 S.W.3d 919, 924 (Tex.App.-Dallas 2005, no pet.).

### 2. Applicable Law

A communication relating to the subject matter of any civil dispute made by a participant in an arbitration is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial proceeding. *See* Tex. Civ. Prac. & Rem.Code Ann. § 154.073(a) (Vernon 2005). Also, any record made at an arbitration is confidential, and the participants or the arbitrators may not be required to testify in any proceedings relating to or arising out of the matter in dispute or be subject to disclosure of confidential information or data relating to or arising out of the matter in dispute. *See id.* § 154.073(b).

■ However, section 154.073 does not create a blanket of confidentiality nor is it so broad as to bar all evidence regarding everything that occurs at arbitration from being presented in the trial court. *See In*

---

argues the trial court erred when it ruled the documents and depositions relating to WNJ's arbitration proceeding against Ernst & Young were confidential. He claimed the arbitration documents related to the issue of any offset he was entitled to if he was found liable on WNJ's counterclaims and he anticipated it was impeachment material pertaining to the bonuses approved by the board. In the second part of issue three, Knapp argues the trial court erred when it ruled the documents re-

lating to the arbitration were not admissible at trial. In issues five and six, Knapp argues the trial court erred when it denied his request for the damages against him to be offset and his post-verdict motion for leave to amend so he could submit the issue of offset.

Because these issues relate to Knapp's liability, we construe them as pertaining to the portion of the trial court's judgment relating to WNJ's counterclaims.

*re Learjet, Inc.,* 59 S.W.3d 842, 847 (Tex. App.-Texarkana 2001, orig. proceeding); *In re Daley,* 29 S.W.3d 915, 918 (Tex.App.-Beaumont 2000, orig. proceeding). The confidentiality statutes relating to arbitration have not been afforded the status of privileges by case law, although it is helpful to analogize the confidentiality statute to situations where privileges have been held not to be absolute. *See Alford v. Bryant,* 137 S.W.3d 916, 921 (Tex.App.-Dallas 2004, pet. denied). These are exceptions to the general rule of confidentiality of oral communications and written materials relating to arbitration proceedings. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 154.073(c), (d), (e), (f); *Alford,* 137 S.W.3d at 922; *Avary v. Bank of Am., N.A.,* 72 S.W.3d 779, 794–95 (Tex.App.-Dallas 2002, pet. denied); *In re Acceptance Ins. Co.,* 33 S.W.3d 443, 453 (Tex.App.-Fort Worth 2000, orig. proceeding).

■■■ If the communication or written material does not relate to the subject matter of the dispute, or does not relate to or arise out of the matter in dispute, it may not be confidential under section 154.073(a) and (b) of the Texas Civil Practice and Remedies Code. *See Avary,* 72 S.W.3d at 794. Disclosure may be warranted when a party does not seek discovery of arbitration evidence to obtain additional funds from the defendant in the arbitration or to establish any liability on the arbitration defendant's part after the dispute has been peaceably resolved, but proposes to offer the arbitration evidence in a separate case against a separate party to prove a claim that is factually and legally unrelated to the arbitration claims. *See Alford,* 137 S.W.3d at 922; *Avary,* 72 S.W.3d at 798–800. Also, disclosure may be warranted in a case alleging a new and independent cause of action when disclosure of the confidential communications or written materials will not disturb the set-

tlement in the underlying arbitration. *See Alford,* 137 S.W.3d at 922.

■■■ It is the policy of this State to encourage the peaceable resolution of disputes and the early settlement of pending litigation through voluntary settlement procedures. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 154.002 (Vernon 2005). Proponents of alternative dispute resolution stress that confidentiality is critical to the success of the process. *Avary,* 72 S.W.3d at 797. Without a guarantee of confidentiality, parties may be reluctant to speak freely or address the heart of their dispute. *Id.* Despite the public policy supporting arbitration and the peaceable resolution of disputes, there is an equally important public policy to preserve significant and well-established procedural and substantive rights. *Id.* at 799.

### C. Application of the Law to the Facts

On October 25, 2005, Knapp filed a motion to compel the production of documents relating to WNJ's arbitration with Ernst & Young and to compel witnesses Gail Utter and Bill Benton to answer deposition questions. Although the motion is not in the clerk's record, it is referenced in the record of the hearing and in the trial court's order. During the hearing, Knapp stated he was seeking discovery relating to the arbitration as follows: (1) witness statements; (2) deposition testimony; (3) identification of expert witnesses; (4) identification of witnesses that testified; (5) the pleadings; and (6) the award. Knapp's counsel argued the requested discovery related to the issue of offset and he anticipated it was impeachment material. The trial court did not permit oral argument on the motion and instead, required the parties to send briefing to an address provided by the trial judge. The briefing is not in the clerk's record. On November 11, 2005, the trial court signed an order grant-

ing Knapp's motion to compel with respect to his requests for WNJ's: (1) statement of claims in the arbitration; (2) arbitration award; and (3) to ask the WNJ corporate representative, during the deposition, about the date and time of the arbitration, who was present at the arbitration, and whether the arbitration proceeding was recorded. The trial court denied the remainder of Knapp's motion to compel discovery relating to the arbitration.

Four points are pivotal in reaching our conclusion. First, although WNJ argues we should look to the Rules of the American Arbitration Association and the letter of engagement, these documents are not in the record and there is nothing showing they were presented to the trial court. Nevertheless, the arbitration award states that jurisdiction under this dispute arises under both the AAA Rules for the Professional Accounting and Related Services Disputes and the Rules for Non–Administered Arbitration of the CPR Institute for Dispute Resolution. Rule 10 of the Professional Accounting and Related Services Dispute Resolution Rules states, in part, "Any information or material exchanged during the course of discovery, or the arbitration, shall be confidential unless the parties specifically agree otherwise." However, Knapp was not a party to the separate arbitration proceeding or the agreements between WNJ and Ernst & Young.

Second, the arbitration award indicates there was live or deposition testimony made under oath at the arbitration. In the "Award" section of the arbitrator's award, which was "admitted for record purposes," it states, in part:

> WNJ also claims damages [against Ernst & Young] on account of bonuses the Board voted to certain employees during the years 2000 and 2001, **totaling $1,643,352,** and a loss of $7,252,931.18

spent on the aborted installation of a new information system for the hospital. **The testimony of several WNJ Board members** established that it was more likely than not that had the Board known the true situation with respect to the hospital's accounts receivable, **they would not have voted to pay the bonuses** or to enter into the contract for the new information system at the times they did.

(emphasis added).

Third, Knapp sought the depositions or testimony from the arbitration to determine whether WNJ took a position at the arbitration as to the authorization of bonuses that was different from the position it took at trial. The "Damages" section of WNJ's statement of claims in the arbitration was "admitted for record purposes" and states, in part:

> In addition to these capital expenses, WNJ also incurred operational costs it would not have incurred had its financial conditions been properly reported. Specifically, the hospital's illusion of profitability in 2000 and 2001 **led the board to approve and pay approximately $1.6 million in discretionary employee bonuses.** Those bonuses were primarily based on the hospital's financial performance, and would not have been awarded if [Ernst & Young] had notified WNJ of its true financial condition.

(emphasis added). Similarly, the arbitration award states the board voted to approve bonuses in the amount of $1.64 million and the board members testified they voted to approve those bonuses.

However, during the trial, Gail Utter, the chair of the WNJ board and who, during the relevant time, was the chair of the audit/finance committee and served on the compensation committee, testified the board did not approve $1.6 million in bonuses. Knapp attempted to refresh her

memory with WNJ's statement of claims from the arbitration, but WNJ objected and the trial court sustained the objection. Steve Jones, a former member of the board and, during the relevant time, the chairman of the finance committee and a member of the compensation committee, testified bonuses were paid in excess of the amount approved by the board. Jim Braley, a project leader for Cambrio, a national consulting firm that assessed WNJ's operations, testified in 1999, the board approved bonuses in the total amount of $580,000, but $721,037 was actually paid. Also, he stated in 2001, the board approved $580,000 in bonuses, but $922,315 was actually paid. Based on Braley's testimony, the board approved $1.16 million in bonuses, but paid approximately $1.64 million in bonuses.

Finally, the only damages the jury awarded WNJ on each of its counterclaims were the amount of bonuses paid that were in excess of the bonuses authorized by the board. Specifically, the jury found:

> bonuses in excess of bonus amounts authorized by the Board of Trustees of The Wilson N. Jones Memorial Hospital d/b/a Wilson N. Jones Regional Health System
> Answer: *$101,569*

The statement of claims and arbitration award indicate the amount of bonuses the board authorized and paid was a part of WNJ's claims against Ernst & Young. On this record, it appears the arbitration documents address the same accusations of fraud and mismanagement WNJ has alleged against Knapp in its counterclaims.

██ Significant substantive and procedural rights of Knapp's are implicated, including the opportunity to develop evidence to defend against WNJ's counterclaims and to submit contested fact issues to the jury. *See Avary*, 72 S.W.3d at 800. In pursuing his defense, Knapp will

not disturb the arbitration award between WNJ and Ernst & Young. *See id.* Knapp does not seek discovery of arbitration evidence to obtain additional funds from Ernst & Young, the defendant in the arbitration, or to establish any liability on Ernst & Young's part after the dispute between WNJ and Ernst & Young has been peaceably resolved. Instead, Knapp, a separate party, proposes to offer the arbitration evidence in a separate lawsuit to defend against WNJ's counterclaims. *See Alford*, 137 S.W.3d at 922; *Avary*, 72 S.W.3d at 798–800. In fact, the lawsuit between Knapp and WNJ alleges new and independent causes of action and disclosure of the confidential arbitration communications or written materials will not disturb the arbitration between WNJ and Ernst & Young. *See Alford*, 137 S.W.3d at 922. We conclude the trial court abused its discretion because its refusal to allow discovery of the depositions, testimony, or witness statements in the arbitration probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a)(1).

The portion of issue two in his brief on appeal that relates to the discovery of the witness statements and deposition testimony in the arbitration is decided in Knapp's favor. Based on our resolution of issue two, we need not address issues one, the second part of issue three, and issues five through six in Knapp's brief.

██ However, in his motion for rehearing, Knapp argues the Court is required to address issue one, his legal sufficiency issue, and should not address his issue relating to discovery before addressing his issue relating to legal sufficiency because doing so will result in the Court reversing the trial court's judgment and remanding the cause for further proceedings, rather than rendering a judgment in his favor. We disagree.

Appellate courts have broad discretion to remand a case for a new trial in the interest of justice. *See* TEX.R.APP. P. 43.3(b); *Scott Bader, Inc. v. Sandstone Prods., Inc.,* 248 S.W.3d 802, 822 (Tex. App.-Houston [1st Dist.] 2008, no pet.). Remand is appropriate when, for any reason, a case has not been fully developed. *See Scott Bader,* 248 S.W.3d at 822; *see also In re S.E.W.,* 168 S.W.3d 875, 886 (Tex.App.-Dallas 2005, no pet.) (although mother failed to preserve error on issue of expert testimony, case remanded in interest of justice); *Ahmed v. Ahmed,* 261 S.W.3d 190, 196 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (trial court award was improper but remand required because trial court's ruling did not allow parties to fully develop evidence).

We recognize Knapp's legal sufficiency challenge, if successful, would result in rendition of WNJ's breach of contract claim against him. *See Scott Bader,* 248 S.W.3d at 822. However, we do not address issue one because, even if we were to decide Knapp's legal sufficiency challenge in his favor, resolution of issue one will not result in greater relief for Knapp, in this case, than that afforded by our resolution of the portion of issue two, which relates to the discovery of the witness statements and deposition testimony in the arbitration. *See id.* We would still remand the case because the trial court's refusal to allow discovery prevented this case from being properly developed and presented at trial. *See id.* Here, the trial court's refusal to allow discovery affected and shaped the presentation and development of this case during trial, for both Knapp and WNJ. Had the trial court not refused the discovery requests, it seems clear, based on the parties' arguments and positions, that both parties would have presented additional evidence during trial. *See id.*

Also, we point out, in issue one, Knapp challenged only the legal sufficiency of the evidence to support the jury's finding against him on WNJ's counterclaim for breach of contract. WNJ brought counterclaims against Knapp for breach of contract, breach of fiduciary duty, fraud, and negligence. The jury found against Knapp and in favor of WNJ on all of WNJ's counterclaims and assessed the same amount of damages against Knapp, $101,569, for each and every counterclaim. The trial court's judgment is based on the jury's findings against Knapp on all of WNJ's counterclaims against him and it ordered that WNJ recover damages in the principal amount of $101,569 from Knapp. As a result, even if Knapp's legal sufficiency challenge were successful and judgment rendered against WNJ on its breach of contract counterclaim, WNJ's counterclaims for breach of fiduciary duty, fraud, and negligence and the damages assessed by the jury in the amount of $101,569 would be unaffected.

In light of our conclusion the trial court abused its discretion when it denied Knapp's requests for discovery of the witness statements and deposition testimony in the arbitration, we conclude the proper disposition of this case is to reverse the portion of the trial court's final judgment awarding judgment to WNJ on its counterclaims and remand the cause for further proceedings consistent with this opinion. *See id.*

## IV. CONCLUSION

As to Knapp's breach of contract claim against WNJ: (1) we need not address the merits of the first part of issue two and the first part of issue three in Knapp's brief, which claim the trial court erred when it ruled the board meeting minutes and financial documents were privileged and that the board meeting minutes were not

admissible; and (2) we conclude Knapp failed to preserve for appeal issue four, which claims the trial court erred when it instructed the jury it could consider post-termination, after-acquired evidence when determining whether Knapp was terminated for cause.

As to WNJ's counterclaims against Knapp, we conclude the trial court erred when it denied, in part, Knapp's motion to compel discovery relating to WNJ's arbitration proceedings against Ernst & Young, deciding the second part of issue two in Knapp's favor. Based on our resolution of the second part of issue two, we need not address issues one, the second part of issue three, and issues five through six.

The portion of the trial court's final judgment ordering that Knapp take nothing as to his breach of contract claim against WNJ is affirmed. The portion of the trial court's final judgment awarding judgment to WNJ on its counterclaims against Knapp is reversed. The cause is remanded for further proceedings consistent with this opinion.