# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-17-00570-CV

**Mometrix Media, LLC, Appellant**

**v.**

**LCR Publishing, LLC, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-17-001625, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## O P I N I O N   A N D   O R D E R

We withdraw the opinion and judgment dated July 31, 2018, substitute the following opinion and order in their place, and deny appellant's motion for rehearing.

In this interlocutory appeal, Mometrix Media, LLC (Mometrix) appeals from the trial court's denial of its motion to dismiss pursuant to the Texas Citizens Participation Act (TCPA). *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. LCR Publishing, LLC (LCR) sued Mometrix alleging tortious interference with contract after Mometrix communicated to online retailer Amazon that it believed LCR's publications infringed on copyrighted material and Amazon removed the publications from its website. Mometrix filed a TCPA motion to dismiss, contending that LCR's suit was a legal action based on a communication about a matter of public concern. *See*

*id.* §§ 27.001(1), (3), (6), (7), .003(a). On appeal, Mometrix for the first time challenges the jurisdiction of the trial court and this Court. For the reasons that follow, we remand this case to the trial court for a determination of its subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

LCR is a Texas publishing company specializing in the creation and distribution of test preparation materials and study guides for standardized exams. Mometrix is a direct competitor of LCR. In approximately May 2016, LCR began offering its publications online through Amazon.com, where Mometrix also offers its publications. LCR noticed that within days after the publication of a new study guide, anonymous negative online reviews would appear. Within ten months, LCR's publications received approximately 50 negative reviews. In March 2017, LCR discovered that its publications were no longer available for sale on Amazon.com. LCR contacted Amazon's "copyright agent," CreateSpace,[2] and learned that Mometrix had filed complaints alleging that four of LCR's publications infringed on Mometrix's copyrights. LCR contacted Mometrix, which declined to explain the basis for its complaints. LCR subsequently obtained copies of the complaints.

In April 2017, LCR filed suit against Mometrix alleging that Mometrix had tortiously interfered with LCR's existing relationship with CreateSpace/Amazon by wrongfully asserting

---

[1] The factual background is taken from the appellate record and the parties' briefs. We accept as true all facts stated and not contradicted by another party. *See* Tex. R. App. P. 38.1(g).

[2] Mometrix refers to CreateSpace as Amazon's "copyright agent" that takes infringement complaints. LCR has referred to CreateSpace as Amazon's "online publisher" and as a "subsidiary" of Amazon. Documentary evidence in the record reflects that CreateSpace is "an Amazon company."

2

copyright infringement claims.[3] Mometrix filed a motion to dismiss, arguing (1) that the TCPA applied because LCR's suit was a legal action based on Mometrix's communications to CreateSpace, which were protected under the TCPA as Mometrix's exercise of the right of free speech on matters of public concern, specifically on issues concerning goods or products in the marketplace, *see id.* §§ 27.001(1), (3), (6), (7)(E), .003(a); (2) that consequently LCR was required to establish a prima facie case of its tortious interference claim to avoid dismissal, *see id.* § 27.005(b), (c); and (3) that even if LCR could establish a prima facie case, its claim should be dismissed because Mometrix had established an affirmative defense of justification, *see id.* § 27.005(d). LCR sought limited discovery related to the motion to dismiss, *see id.* §§ 27.003(c), .006(b), which the trial court granted. Mometrix filed a petition for writ of mandamus in this Court challenging the discovery order, which this Court denied. Mometrix then sought mandamus relief in the Texas Supreme Court, which also denied relief. After the parties completed the allowed discovery, LCR filed a motion for supplemental limited discovery, which the trial court granted in part. Following a hearing, the trial court denied Mometrix's motion to dismiss. This interlocutory appeal followed. *See id.* § 27.008.

## DISCUSSION

On appeal, Mometrix for the first time challenges the trial court's and this Court's subject matter jurisdiction. Mometrix argues that LCR's claim for tortious interference with contract is preempted by federal copyright law and that federal courts have exclusive jurisdiction over the

---

[3] LCR also filed suit against "John Doe," asserting causes of action under the Lanham Act, common law unfair competition, and tortious interference with prospective business relations. "John Doe" has not been identified, and LCR's claims against him, which were based on the negative online reviews, are not at issue in this appeal.

3

case as one arising under the Copyright Act. *See* 17 U.S.C. § 301 (providing that Copyright Act preempts all legal or equitable rights that are equivalent to exclusive rights within scope of Copyright Act); 28 U.S.C. § 1338(a) (providing that federal courts have exclusive jurisdiction over action "arising under" Copyright Act). A preemption argument that implicates subject matter jurisdiction—that is, choice of forum rather than merely choice of law—such as Mometrix's argument here, may be raised for the first time on appeal. *See Oncor Elec. Delivery Co. LLC v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018) ("Because a challenge to the court's subject-matter jurisdiction cannot be waived, a party may raise exclusive jurisdiction for the first time on appeal."); *Brauer v. Brauer*, No. 02-11-00109-CV, 2012 Tex. App. LEXIS 7991, at *7 (Tex. App.—Fort Worth Sept. 20, 2012, no pet.) (mem. op.) ("A defendant may raise a pre-emption argument for the first time on appeal only if the issue of pre-emption implicates the subject matter jurisdiction of the court, that is, the choice of forum rather than merely the choice of law."); *see also Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (per curiam) ("We must consider our jurisdiction, even if that consideration is sua sponte."); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012) (Lehrmann, J., dissenting) ("Subject matter jurisdiction cannot be waived or conferred by agreement, can be raised at any time, and must be considered by a court sua sponte."). Mometrix contends that because the federal courts have exclusive jurisdiction, this Court lacks jurisdiction and must dismiss LCR's suit against Mometrix.[4]

---

[4] At the same time, Mometrix "appeals the trial court's denial of the TCPA motion" and contends that we should "reverse the trial court and render judgment in favor of Mometrix and remand for attorney's fees and sanctions as required by the TCPA." *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1), (2). Because of our disposition of the jurisdictional issue, we do not address this contention.

4

**Preemption under Federal Copyright Law and Exclusive Federal Jurisdiction**

The trial court and this Court would generally have subject matter jurisdiction over LCR's state law claim for tortious interference. The question here, however, is whether LCR's claim for tortious interference is preempted by federal law, specifically whether it falls within the scope of the Copyright Act. "The Copyright Act expressly preempts all causes of action falling within its scope, with few exceptions." *Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995); *see* 17 U.S.C. § 301(a) (providing that all claims that are equivalent to exclusive rights within scope of copyright are governed exclusively by Copyright Act).[5] The Fifth Circuit has established a two-part test to determine if a state law claim is preempted. *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 594 (5th Cir. 2015); *Carson v. Dynegy*, 344 F.3d 446, 456 (5th Cir. 2003); *Efremov v. GeoSteering, LLC*, No. 01-16-00358-CV, 2017 Tex. App. LEXIS 2166, at *6 (Tex. App.—Houston [1st Dist.] Mar. 14, 2017, pet. denied) (mem. op.). Under the first prong, the claim is examined to determine whether it falls within the subject matter of copyright. *See Spear Mktg.*, 791 F.3d at 594; *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012); *Daboub*, 42 F.3d at 289; *Butler v. Continental Airlines, Inc.*, 31 S.W.3d 642, 650 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Under the second prong, the claim is preempted if it protects rights equivalent to any of the

---

[5] *See also* H.R. Rep. No. 94-1476, at 130 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5746 ("Preemption of State Law. The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works coming within the scope of the Federal copyright law. The declaration of this principle in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection. . . . All corresponding State laws, whether common law or statutory, are preempted and abrogated.").

exclusive rights of a copyright. *Spear Mktg.*, 791 F.3d at 594; *Carson*, 344 F.3d at 456; *Efremov*, 2017 Tex. App. LEXIS 2166, at *7. "The test for evaluating the equivalency of rights is commonly referred to as the 'extra element' test." *Carson*, 344 F.3d at 456; *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999). Under the extra element test, the rights granted under a state law claim are equivalent to the rights granted by the Copyright Act if the elements of the state law cause of action would not establish qualitatively different conduct by the defendant than the elements for an action under the Copyright Act would establish. *Alcatel*, 166 F.3d at 787; *Daboub*, 42 F.3d at 290; *Butler*, 31 S.W.3d at 651. If the complained-of acts of the defendant would establish a violation of both state law and copyright law, then the rights under the state law are deemed equivalent to the rights granted under copyright law. *Alcatel*, 166 F.3d at 787. In short, "[w]hen the essence of a state law claim is the same as that in a copyright action[,] it is not qualitatively different." *Masck v. Sports Illustrated*, No. 13-10226, 2013 U.S. Dist. LEXIS 81677, at *14 (E.D. Mich. June 11, 2013). The Fifth Circuit has held that "both prongs of [the] two-factor test must be satisfied for preemption to occur." *Carson*, 344 F.3d at 456.

"Ordinarily, preemption operates as an affirmative defense to a plaintiff's state-law claims but does not deprive state courts of jurisdiction over those claims." *Mills v. Warner Lambert Co.*, 157 S.W.3d 424, 425 (Tex. 2005) (per curiam); *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (stating that preemption does not necessarily confer jurisdiction since it is generally defense to plaintiff's suit). "State-court jurisdiction is affected only when Congress requires that claims be addressed exclusively in a federal forum." *Mills*, 157 S.W.3d at 425; *see Chappell v. SCA Servs., Inc.*, 540 F. Supp. 1087, 1095 (C.D. Ill. 1982) (explaining that under federal

6

preemption, federal substantive law supplants state law but absent other provisions, state and federal courts have concurrent jurisdiction while under exclusive federal jurisdiction, only specified federal courts have jurisdiction regardless of law to be applied); *see also Mills*, 157 S.W.3d at 427 (noting confusion of terminology and explaining that when courts refer to "preemption of jurisdiction," they refer not to applicability of federal law but to requirement that claim be resolved in federal forum). Whether this Court and the trial court have subject matter jurisdiction depends on whether section 301(a) preempts LCR's state law claim for tortious interference. *See GlobeRanger*, 691 F.3d at 706 (stating that "real jurisdictional dispute" was whether Copyright Act preempted state claims); *Bolier & Co. v. Decca Furniture (USA), Inc.*, 58 F. Supp. 3d 491, 494 (W.D.N.C. 2014) (stating that because state law actions preempted by section 301(a) of Copyright Act "arise under" federal law, question of jurisdiction would be resolved by determination of whether Copyright Act preempted state law claim).

**Application of Law to Facts**

It appears to be undisputed that LCR's claim that Mometrix wrongfully asserted copyright infringement concerning written test preparation materials falls within the subject matter of copyright. *See* 17 U.S.C. § 102(a) (providing that copyright protection covers original works of authorship fixed in any tangible medium of expression and capable of being perceived, reproduced, or otherwise communicated, including literary works). We turn, then, to the second prong of the test for preemption.

Under the second prong of the test for preemption, we must determine whether LCR's claim for tortious interference with contract is equivalent to a claim brought to enforce exclusive

rights under the Copyright Act. *See Spear Mktg.*, 791 F.3d at 594. Mometrix contends that LCR's claim for tortious interference based on Mometrix's complaints to CreateSpace is equivalent to a claim based on a wrongful "takedown notice" under section 512 of the Copyright Act so that the provisions of section 512 preempt LCR's state law claim. *See* 17 U.S.C. § 512(f); *Spear Mktg.*, 791 F.3d at 594; *Alcatel*, 166 F.3d at 787. Section 512, added to the Copyright Act as part of the 1998 Digital Millennium Copyright Act (DMCA), limits liability for "incidental acts of copyright infringement" by providing safe harbors for internet service providers that follow certain procedures.[6] *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1201 (N.D. Cal. 2004); *see* 17 U.S.C. § 512(a)–(d). Section 512(c) provides one such safe harbor for providers who store information on systems or networks at the direction of users without actual knowledge of infringement. *See* 17 U.S.C. § 512(c). Because an internet provider must store information at the direction of the user in order to qualify for a safe harbor under this provision, Section 512(c) has been referred to as "the 'storage' safe harbor." *See Online Policy Grp.*, 337 F. Supp. 2d at 1201.

Section 512(c) "augments the rights of copyright owners by establishing a notice-and-takedown regime" for internet providers who qualify under section 512(c).[7] *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 83 (2d Cir. 2016). Through this procedure, those who believe an internet service provider is hosting material that infringes on their copyrights can submit

---

[6] "The DMCA was enacted in 1998 to implement the World Intellectual Property Organization Copyright Treaty and to update domestic copyright for the digital age." *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 82 (2d Cir. 2016). "To that end, the DMCA established four safe harbors, codified at 17 U.S.C. § 512, which protect qualifying Internet service providers from liability for certain claims of copyright infringement." *Id.*

[7] Section 512(d) also contains a notice-and-takedown procedure, but Mometrix does not contend that section 512(d) applies to this case. *See* 17 U.S.C. § 512(d).

a formal takedown notice. *See* 17 U.S.C. § 512(c)(1)(C), (3); *Stevens v. Vodka & Milk, LLC*, No. 17-cv-8603 (JSR), 2018 U.S. Dist. LEXIS 43666, at *3 (S.D.N.Y. Mar. 15, 2018). Section 512(c)(3) sets out the content requirements for a proper notification of infringement, which include (1) identification of the copyrighted work, (2) identification of the allegedly infringing material, and (3) a statement that the complaining party believes in good faith that use of the allegedly infringing material is not authorized by the copyright owner, its agent, or the law. *See* 17 U.S.C. § 512(c)(3)(A)(i), (ii), (v). A service provider is not liable for monetary relief if, upon notification of claimed infringement, it responds expeditiously to remove the infringing material. *See id.* § 512(c)(1)(C). On the other hand, if, after receiving a takedown notice, the provider continues to host the allegedly infringing material, it loses the benefit of the safe harbor. *See id.*; *Stevens*, 2018 U.S. Dist. LEXIS 43666, at *3; *Online Policy Grp.*, 337 F. Supp. 2d at 1201 ("Once the [service provider] has actual knowledge of the infringing material, it loses the safe harbor protections unless it complies with the DMCA."). As further protection for the service provider and copyright owner, section 512(f) provides a remedy for injury resulting from a wrongful takedown notice. *See* 17 U.S.C. § 512(f). Under section 512(f), any person who knowingly misrepresents that material is infringing is liable for any damages incurred by the alleged infringer, by any copyright owner or its licensee, or by a service provider that is injured by the misrepresentation as the result of the service provider's reliance on it in removing material. *See id.*

Here, Mometrix contends that its complaints constitute takedown notices under section 512(c)(3)(A) and that LCR's state law claim for tortious interference with contract is equivalent to a claim under section 512(f) and is therefore preempted. In support of its argument,

9

Mometrix relies on *Stevens*. *See* 2018 U.S. Dist. LEXIS 43666. In that case, Stevens contacted online retailers and asked that they stop selling Vodka & Milk's book because it infringed on his copyright. *Id.* at *2. Stevens then sued Vodka & Milk alleging various claims. *Id.* at *1. Vodka & Milk filed a counterclaim asserting a state law claim for intentional interference with contract based on Stevens' communications to the online retailers. *Id.* at *2. Stevens sought dismissal of the state law claim for interference with contract arguing that it was preempted by section 512 of the DMCA. *Id.* at *3. The court noted that it was undisputed that the notices Stevens sent to online retailers were takedown notices under section 512, that takedown notices are "creations entirely of federal law," and that the DMCA included an express remedy for the very wrong that Vodka & Milk alleged in its counterclaim. *Id.* at *3, *6–7. Thus, the court held that Vodka and Milk's state law counterclaim for intentional interference with contract was preempted by the DMCA and dismissed the counterclaim. *Id.* at *7. Mometrix urges that as in *Stevens*, LCR's state law claim for tortious interference arising from Mometrix's communications to Amazon is preempted by the DMCA and should be dismissed.

In response, LCR initially argues that Mometrix's complaints were not formal takedown notices under section 512 because the complaints did not specifically refer to the DMCA or to section 512. However, section 512(c)(3)(A) requires only that a notice of infringement include "substantially" six types of information, and the specified information does not mandate an express reference to the DMCA. *See* 17 U.S.C. § 512(c)(3)(A). Based on the record before us, it appears

10

that Mometrix's complaints were takedown notices because they substantially complied with section 512(c)(3)(A).[8]

LCR further argues that section 512 does not apply to this case because CreateSpace is not the type of internet service provider to which section 512(c) applies. LCR contends that because CreateSpace is an online publisher that selects the publications it provides for resale to the public, and it does not store information "at the direction of users," section 512(c) does not apply to it, and Mometrix's complaints do not constitute takedown notices. LCR relies on the declaration of its Vice President Douglas Richter, in which he stated that "LCR sells its publications to CreateSpace, which, in turn, sells our publications online through Amazon.com" and "provides LCR royalties based on a percentage of the retail list price."

By its own terms, section 512(c) applies to "Information residing on systems or networks at direction of users." *See* 17 U.S.C. § 512(c); *Rock River Communic'ns., Inc. v. Universal Music Grp., Inc.*, No. CV08-635-CAS (AJWx), 2011 U.S. Dist. LEXIS 46023, at \*49 (C.D. Cal. Apr. 27, 2011) (observing that section 512(c) was "intended to apply to alleged infringement as a result of materials stored at the direction of users, rather than through the intentional activity of the internet service provider itself"). Determining whether an internet service provider stores information at the direction of the user is a complex analysis, involving questions not answered by the Richter declaration or otherwise in the record before us, including whether users upload their

---

[8] We note that LCR maintains that the complaints are also deficient in that Mometrix is not the owner of the copyrights to the publications at issue, which it contends is one of the elements of a proper takedown notice. *See* 17 U.S.C. 512(c)(3)(A). As noted in footnote 10 herein, and in light of our remand to the trial court, we express no opinion on this issue.

own content, what discretion the service provider exercises, what automated or manual processing is done by the provider, and whether and to what extent another party acts as agent for the provider.[9] *See Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1049, 1056–57 (9th Cir. 2017) (stating that "[i]nfringing material is stored at the direction of the user if the service provider played no role in making that infringing material accessible on its site or if the service provider carried out activities that were 'narrowly directed' towards enhancing the accessibility of the posts" and remanding for determination of fact issue as to whether "moderators" who reviewed user-submitted photographs before posting on social media platlform LiveJournal were acting as agents for LiveJournal so that moderators' acts could be attributed to LiveJournal for purposes of determining whether photographs were stored at direction of users") (citation omitted); ; *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 39–40 (2d Cir. 2012) (concluding that YouTube's "related videos" software function qualified for safe harbor protection under section 512(c) where algorithm for indexing and display of related videos was fully automated; involved no input from YouTube employees; was "closely related to, and follow[ed] from, the storage itself;" and was "narrowly

---

[9] Falling within the definition of internet service provider is one of several threshold conditions that a service provider must meet to be eligible for any of the safe harbors under section 512. *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1099 (W.D. Wa. 2004). Only if a service provider meets the threshold requirements does it qualify under section 512, and then it must establish that it meets a particular safe harbor provision, such as that in section 512(c). *See id.* The *Rock River* court concluded that meeting the threshold definition of service provider was not sufficient "in light of the subject matter of the correspondence." *Rock River Communications., Inc. v. Universal Music Grp., Inc.*, No. CV08-635-CAS (AJWx), 2011 U.S. Dist. LEXIS 46023, at *49 n.10 (C.D. Cal. Apr. 27, 2011). Further, the court expressly held that the reason the complaint at issue was not a takedown notice under section 512(c) was "*because it [did] not address claimed infringement 'by reason of the storage [of material] at the direction of a user.*'" *See id.* at *50 (emphasis added.).

12

directed toward providing access to material stored at the direction of users"); *Distribuidora de Discos Karen, C por A. v. Seijas*, No. 13 Civ. 5200 (NRB), 2015 U.S. Dist. LEXIS 42636, at *20 (S.D.N.Y. Mar. 26, 2015) (concluding that complaint regarding postings to iTunes did not state enough facts for court to determine whether iTunes stored music at direction of users, denying defendants' motion to dismiss, and instructing parties to proceed with discovery on limited question of whether federal claim was viable under section 512(f)).

Because Mometrix raised the issue of preemption under section 512(f) for the first time in its reply brief in this Court, the record is insufficiently developed for us to make this determination because it lacks evidence relevant to whether CreateSpace or Amazon stores information at the direction of users. *See Distribuidora* (observing that complaint did not state enough facts for court to determine whether iTunes stored music at direction of users); *Rusk State Hosp.*, 392 S.W.3d at 96 (noting that plaintiff may not have had opportunity to amend pleadings or develop record when jurisdiction is not raised in trial court). There is no evidence conclusively establishing the relationship between CreateSpace and Amazon or whether CreateSpace is Amazon's agent for purposes of making material available on Amazon's website, *see Mavrix Photographs*, 873 F.3d at 1057; no evidence of whether or to what extent either CreateSpace or Amazon plays a role in making material accessible on Amazon's site, *see id.* at 1056; and no evidence concerning whether and to what extent CreateSpace or Amazon processes the content or otherwise exercises discretion in organizing, making available for purchase, or promoting LCR's publications, *see Viacom*, 676 F.3d at 40; *Distribuidora de Discos Karen*, 2015 U.S. Dist. LEXIS 42636, at *20; *cf. Rock River*, 2011 U.S. Dist. LEXIS 46023, at **50 (noting that it was "undisputed that Apple,

13

and not its users, decides what is available for purchase on iTunes" and concluding that complaint at issue was "not a take-down letter as described in section 512(c) because it [did] not address claimed infringement 'by reason of the storage at the direction of a user'"(quoting 17 U.S.C. 512(c)(1))). Consequently, the record does not contain enough evidence for this Court to determine whether section 512(c) applies to this case. It follows that the record is insufficiently developed for this Court to determine whether LCR's claim for tortious interference is equivalent to a claim under section 512(f) and whether exclusive federal jurisdiction precludes jurisdiction in the trial court and in this Court. *See Spear Mktg.*, 791 F.3d at 594; *Distribuidora de Discos Karen*, 2015 U.S. Dist. 42636, at *22; *Rusk State Hosp.*, 392 S.W.3d at 96 (noting that plaintiff may not have had opportunity to amend pleadings or develop record when jurisdiction is not raised in trial court).

"Appellate courts have broad discretion to remand for a new trial in the interest of justice." *In re Estate of McNutt*, 405 S.W.3d 194, 197 (Tex. App.—San Antonio 2013, no pet.); *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 176 (Tex. App.—Dallas 2009, no pet.). "Remand is appropriate when, for any reason, a case has not been fully developed . . . ." *Innovate Tech. Solutions, L.P. v. Youngsoft, Inc.*, 418 S.W.3d 148, 153 (Tex. App.—Dallas 2013, no pet.); *Knapp*, 281 S.W.3d at 176; *see,* e.g., Ahmed *v. Ahmed*, 261 S.W.3d 190, 196 (Tex. App.—Houston [4th Dist.] 2008, no pet.) ("As long as there is a probability that a case has, for any reason, not been fully developed, an appellate court has discretion to remand for a new trial rather than render a decision."); *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "'Moreover, remand is appropriate if a case needs further development

. . . to establish and present evidence regarding an alternate legal theory." *Ahmed*, 261 S.W.3d at 196

(where trial court evaluated agreement as premarital agreement, remanding for consideration under

other theories of enforcement); *accord Wells Fargo Bank, N.A. v. Riojas*, No. 13-15-00279-CV,

2016 Tex. App. LEXIS 2189, at *7 (Tex. App.—Corpus Christi Mar. 3, 2016, no pet.) (mem. op.)

(remanding for development of record concerning whether jurisdiction in forcible detainer action

was proper in justice court that heard case based on location of property where prior to appeal case

had been pursued solely on theory of res judicata).  Because the record is not sufficiently developed

for this Court to determine whether the federal courts have exclusive jurisdiction in this

case, we remand to the trial court to provide the parties an opportunity to offer additional

pleadings, evidence, and argument on this jurisdictional issue.[10]  *See Distribuidora de Discos Karen*,

2015 U.S. Dist. 42636, at *22; *Rusk State Hosp.*, 392 S.W.3d at 96; *Miranda*, 133 S.W.3d at 226

(observing that court has right to hear necessary evidence to enable it to decide whether it has power

to try case whether want of jurisdiction is raised by plaintiff's pleadings or by defendant's challenge

---

[10] LCR argues that Mometrix cannot invoke the DMCA because Mometrix is not the owner of the copyrights to the publications at issue.  However, section 512(c)(3) does not expressly require that the party giving a takedown notice be the copyright holder.  Rather, it requires a statement under penalty of perjury that the person giving the notice is the owner *or is authorized to act on behalf of the owner* of the copyright—a statement Mometrix's complaints contained.  Mometrix produced evidence that Mometrix purchased the copyrights to two of the publications at issue and was designated the DMCA agent for the other two.  LCR offered contradicting evidence that it had commissioned an author to write one of the passages in dispute and that it had a license to use another so that Mometrix's purported authorization to act concerning those publications was not valid.  LCR also offered evidence that the party who purported to authorize Mometrix to act as its DMCA agent did not understand the role of such an agent and had since revoked Mometrix's authority to act as agent.  In his declaration, LCR Vice President Richter also referred to a webpage from the U.S. Copyright Office website, but the referenced exhibit is not contained in the appellate record, and the implication of the reference is not clear.  On remand, the trial court, in determining its jurisdiction, will have the opportunity to consider the parties' arguments and evidence on this fact question of ownership and authority to give a formal takedown notice.

15

to jurisdiction); *Innovate Tech. Solutions*, 418 S.W.3d at 152; *Estate of McNutt*, 405 S.W.3d at 197;

*Riojas*, 2016 Tex. App. LEXIS 2189, at *7.

## CONCLUSION

For these reasons, we abate this appeal and remand this case to the trial court with

the following instructions:

1.  The trial court shall determine the jurisdictional issue and enter an order to that effect no later than 90 days from the date of this opinion and order.  If the trial court needs additional time to determine its jurisdiction, the parties or the trial court clerk may file a status report with this Court before the 90 days have passed.

2.  Following the trial court's determination of the jurisdictional issue, the appellant shall make arrangements for the appropriate supplemental clerk's records—including all findings and orders—and reporter's records to be forwarded to this Court no later than 30 days from the date the trial court enters an order determining the jurisdictional issue.  Alternatively, the appellant or trial court clerk may file a status report informing this Court that additional time is needed.  In the absence of either a supplemental record forwarded to this Court or a request for additional time, this appeal will automatically reinstate 30 days from the date the trial court enters an order determining the jurisdictional issue and this appeal may be dismissed. *See* Tex. R. App. P. 42.3(c).

It is so ordered on November 21, 2018.  *See* Tex. R. App. P. 43.6.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Abated and Remanded on Motion for Rehearing

Filed:  November 21, 2018